### Hill's Administrators *vs.* Mitchell et al.

Under the Revised Statutes of this State a widow has her dower for life of one-third of the real estate owned by her husband at any time during coverture, whether unsold at his death, or sold, or alienated by him without her consent in legal form; and also, for life of one-third of all slaves possessed by him at his death; and one-third of all personal estate owned by him at his death, absolutely; unless he leaves no children, in which case her interest is one-half of each, instead of one-third.

And this dower in each she takes by way of lien, created by, and at the time of, marriage, and paramount to creditors and purchasers, and without any regard to his debts.

Her dower in each is to be carved out of the specific estate of which he was possessed; and if she has been deprived of it, she can follow it wherever it may be found, and subject it to her lien, unless by her own laches she has abandoned or waived the right.

But she has no dower in the *choses in action* of the husband, though she has in his money or cash on hand.

Lands and slaves are only assets in the hands of the administrator, *sub modo.* On the death of the ancestor the descent, as to each, is cast on the heir or devisee; the title vests in him, and the possession is in law with him.

The personal property goes to the administrator, and he holds that part which is tangible and corporeal, as trustee for the widow, until her dower in it is assigned.

The slaves and lands are conditional assets. The administrator hire out the former, and rent out the latter, but only on the order of the probate court, after the personal estate is exhausted; and the rents and profits will be assets, which, however, he cannot apply until the widow's dower is assigned. But he can only obtain possession, as against heir, or devisee, when the personal estate is insufficient to pay the debts, and he obtains an order of the probate court to rent or make sale of slaves or lands.

In making such sale, the administrator is a mere naked trustee; and the proceeds become assets in his hands.

The widow has no *distributive* share or portion of the estate, for that all goes to the heirs of legatees, after payment of debts.

Her estate in dower does not vest in severalty, until after assignment, but being tenant in possession at the death of her husband, her occupancy cannot be disturbed.

In addition to dower, she is entitled to certain articles specified in section 62 of the chapter on administration, unconditionally, and, against the rights of heirs and creditors; and personal property, valued by appraisement at $150, provided she selects it before sale or distribution. This she takes absolutely against heirs and distributees, but not against creditors.

In the construction of all doubtful statutes, and even constitutional provision, the history of the enactment, as furnished by the rolls or journals, is the very best evidence as to its meaning and intention.

If two statutes, passed at the same time, *in pari materia,* are opposed to each other, and one relates to a primary interest of public policy, and the other to a secondary consideration, that which is greater in principle must govern.

An appeal lies to the circuit court, from a decision of the probate court in case of assignment of dower.

Dower in the lands and slaves is to be assigned by the heir or legatee, and in the personal property, by the administrator.

THIS was an appeal from the probate court of Washington county, determined in the Washington circuit court, in January, 1843, before the Hon. JOSEPH M. HOGE, one of the circuit judges. John and W. D. Reagan, as administrators of Benton G. Hill, presented their account of administration in the probate court, for settlement, which was objected to by certain creditors of the estate, and from the decision made, an appeal was taken to the circuit court. Objections were made in the circuit court to entertaining the appeal, but overruled. The administrator's account showed that the assets which had come to his hands were, accounts belonging to the estate $5,338 87; notes $1,393 40; sales of personal property $6,393 57; cash on hand at the death of intestate $4,845 50; amount of shop books $850. They credited themselves with $4,845 50 paid to the widow as her dower. The probate court reduced this credit to $4,817 20, and held that the widow was entitled to that as her dower, before the debts were paid, and without regard to the solvency of the estate. The creditors excepted and appealed. The circuit court disallowed the whole credit, thus deciding that the widow was not entitled to dower in the personal estate, until the debts were paid. The administrators appealed to this court.

The case was argued here by *David Walker* for appellants, and *Trapnall & Cocke* for appellees.

LACY, J. In order to decide correctly the several points arising in this cause, we shall be compelled to examine very fully the statutes regulating the proceedings in dower and administration. The transcript now before us presents these questions:

*First,* What estate does a tenant in dower take in lands, slaves and personal property?

77

· *Secondly,* To whom do these estates descend, and at what time do they vest? And,

*Third,* By whom is dower to be assigned, and in what manner?

It is difficult to trace the true origin of dower, but all writers admit it to be of great antiquity. It is probable that it first grew out of the customs of the northern nations, who subdued the Roman Empire; and that its introduction into the jurisprudence of England was borrowed from the usages of the Germans or Danes. Like every other species of property, dower underwent a great many changes. It was, however, finally established and confirmed by the law of *Magna Charta;* and from that time to the present, the term "dower" has had a legal and technical meaning, which in England it still retains.

Dower at the common law exists where a man seized of an estate of inheritance, dies in the life time of his wife, in which case she is entitled to be endowed, during her natural life, of one-third part of all his lands and tenements, whereof he was seized at any time during the coverture, and which any issue she might have had, could by possibility have inherited. 2 *Black. Com.* 129. 4 *Kent. Com.* 35. The reason of this allowance is said to be, for the maintenance of the wife and the support and education of her younger children. To constitute a tenantcy in dower three things are necessary. 1st, Marriage. 2d, Seizin of the husband. And 3d, His death. A seizin in law, as well as in deed, entitled the wife to dower, upon the principle that she had no power to reduce her husband's lands into actual possession. The right of dower attached upon all marriages not absolutely void, and existing at the death of the husband. The seizin of the husband for the mere transitory instant, where the estate passes in and out of him at the same time, or where he was a mere naked trustee without any beneficial interest in the inheritance will not entitle the wife to dower.

A widow gave nothing for her dower; and she was allowed to tarry in the mansion house forty days after the death of her husband, and in that time her dower was to be assigned, and during her continuance a reasonable support was allowed her out of the estate. She could not enter for her dower until it was assigned, nor could she alienate so as to enable the grantee to sue for it in his own name. Without

an assignment of dower, she could not maintain an action of ejectment for the possession. The assignment was often *in pais*, by parol, by the party who held the freehold; but if her dower was not assigned within the time prescribed, by the heir or devisee, she had her action by writ of dower *unde nihil habet*, or by a writ of right of dower against the tenant in possession. On a recovery of the premises the sheriff delivered to her possession of dower by metes and bounds, if the property was divisible, and if it was not, it was ordered to be rented out, and she was entitled to receive annually one-third of the profits. She was tenant in common with the heir or devisee until dower was assigned, and then the estate vested and she held in severalty her own interest. The law made it the duty of the heir or devisee to assign the dower, and if he were under age or a minor, it then devolved upon the guardian. The lands passed to the heir at the death of the ancestor to enable him to perform feudal service, and the muniments of title were supposed to accompany the possession of the freehold, and this was the reason that it was his duty of assign dower. The term dower, related exclusively to the interest the widow had in the real estate of inheritance; for it was out of that she was entitled to be endowed of the specific thing. The claim of dower is a creature of law accruing upon the consummation of the contract of marriage: an inchoate right in the beginning, capable of being rendered perfect by the death of the husband and its assignment. It constituted a lien upon the estate of the husband from the date of the marriage, and had preference over the rights of creditors subsequently acquired. The widow's right of dower was a lien in law; the creditor's rights were mere choses in action, and hence the justice and policy of giving priority to her rights over those of the creditors. These provisions and principles of the common law we deem it necessary to state, as they have an important bearing upon the questions now under consideration.

Our statute makes no change in the quantum of the real estate of which a widow is entitled to be endowed by the common law, except in one contingency which we shall presently notice. The statute gives her one-third part of all the lands during her natural life, whereof her husband was seized of an estate of inheritance at any time

during the marriage; and if her husband dies leaving no children, she is to be endowed of one-half thereof. She cannot be deprived of her right of dower by the alienation of her husband, unless she join in the conveyance in the manner pointed out by the statute: and where she accepts a jointure in lieu of dower, or takes as a devizee under the will, her assent must be obtained in strict conformity to the provisions of the statute. By the common law, the widow of an alien was not entitled to be endowed; but under our statute she takes dower in like manner as the wife of a native-born citizen.

There can be no doubt that the widow is endowed of the realty of her husband independent of the rights of creditors. She has precedence over them according to the doctrine of the common law; and besides, our statute expressly declares "a widow shall be endowed of all lands sold in the life-time of her husband without her consent in legal form, against all creditors of the estate." This provision in the act is but an affirmation of the rule of the common law, and her right of dower receives no additional force from its insertion. The 20th section declares that "A widow shall be endowed of one-third part of all the slaves of which her husband died seized, during her natural life, and one-third part of the personal estate in her own right." These words create a positive grant, giving dower in the slaves during her natural life, and in the personal estate unconditionally. She holds the slaves in the same manner as she does the realty, and after her death they go to the heir or devisee, and the personal estate she takes in her own right absolutely. Her dower in all these three kinds of estate is given by the same or similar terms, and stands upon the like principle. She is declared to be endowed of slaves and personal estate in the same manner as of lands. It is admitted that her dower in lands is independent of the rights of creditors, and this being the case, if she takes the slaves and personal estate in the same manner, must she not also hold them by way of lien upon the estate of her husband? Dower is created by law, and it certainly is competent for the legislature to enlarge or limit the estate. When they speak of dower in slaves and personal estate they mean precisely the same thing, as to the vested rights of the wife, as they do in reference to land. They have enlarged the common law definition of the term dower

and made it embrace slaves and personal estate; and if she is endowed of these, she must hold them as a lien created by law, of which she cannot be divested by other accruing rights. Now the interest of dower is a vested interest by law, upon the marriage; and although there is no express provision in the statute declaring that she takes slaves and personal estate against creditors and purchasers, still their being dower gives her that preference. The statute being silent upon the point does not change or repeal the doctrine of the common law, which we have expressly adopted. We do not feel ourselves at liberty by mere implication or construction to disregard not only the rule of the common law upon this subject, but the express provision of the act itself. Slaves and personal estate were not subject to dower at common law. The one species of property was wholly unknown to it, and she took an interest in the other after distribution by way of her reasonable proportion, by the statute of Charles II: but if she had been capable of being endowed of these two kinds of estate, would she not have taken them as she did the realty, unless there was some express provision to the contrary? But should there still remain any doubt on the point, the legislative history of the act of dower clearly explains the whole matter and gives the true rule. It unquestionably proves what was the will and intention of the legislature. In the construction of all doubtful statutes, and even constitutional provisions, the history of the enactment, as furnished by the rolls or journal, is the very best evidence what is the true intent or meaning of the act or law. The act, as it originally passed, shows that the wife's dower did not attach until all the debts of the creditors were paid. But upon the 5th March, 1838, the legislature repealed the 29th and 30th sections of the original statute, thereby declaring that the wife's dower in lands, slaves and personal property was not held subject to the payment of the husband's debts. *Acts Genl. Ass.* 1837, *p.* 135–'6. This is an express legislative interpretation of the act, and we are bound so to construe it. They say by express negative words, amounting to a direct affirmation that the wife's right of dower in lands, slaves and personal estate shall not be taken for the debts of the husband, and this seems to us to be conclusive upon the point. That the history of these legislative facts is proper evidence to be taken into consideration

in construing this statute we think cannot be questioned or denied. It stands upon the highest principles of reason, justice and public policy. The light and assistance thus afforded, we hold to be indispensable in the construction of all doubtful clauses of the law and constitution. *Warner vs. Beers,* 23 *Wend.* 235. The necessity and importance of the rule is proved in this particular instance. Its application reconciles or explains the seeming discrepancies of the act itself, and its apparent or real contradiction to other provisions of the administration act. We hold that the wife's dower of the personal property, like that of the land and slaves, must be carved out of the specific estate of which the husband was seized at the time of his death, and that if she has been deprived of it, as the lien attaches to the property, it can be followed wherever it may be found and subjected to her claim, unless by her own laches she has abandoned or waived her right. The term, personal estate, in the statute has a specific legal meaning and relates to that kind of property which is corporeal and tangible, and which the husband actually exercised dominion over at the time of his death. That it does not include choses in action which are but evidences of debt due the husband, we think clear: they properly belong and go to the administrator for the payment of the debts. Debts go for the payment of debts, and are assets in the hands of the administrator for this purpose. To these dower does not attach. The provisions of the administration law, that make it the duty of the executor or administrator to take possession of all the personal property of the deceased, to return an inventory, to advertise and sell, and pay the debts and distribute the balance in his hands, do not stand in irreconcilable contradiction to the widow's right of dower: and even if they could be so regarded, they would be inoperative by the provisions of the act in regard to that matter, which was passed subsequently. We lay down this general principle upon the subject: If two statutes passed at the same time, *in pari materia,* are opposed to each other, and one of them relates to a primary interest of public policy, and the other, to a secondary consideration, that which is greater in principle must govern. Here, however, we have the will of the legislature upon the subject of dower positively expressed two days after the administration law, one being upon the 3d and the other

on the 5th of March, 1838. Again, the whole code of our Revised Statutes was put in operation by the proclamation of the Governor on the 30th March, 1839, and as a general rule in construing it, the different acts upon the same subject are to be taken together. The administration law declares that lands and slaves shall be assets in the hands of the administrator. But how assets? They are unquestionably assets *sub modo*, subject to the conditions and regulations imposed in the statute. The administrator, by applying to the court of probate, can have an order of sale for the lands, and in like manner he has authority to hire out the slaves annually. There is no express power given to rent the lands; but then, that is fairly deducible as the meaning and intent of the act. He is required to take charge of the growing crop of the intestate, till the meeting of the probate court. The rents and profits are unquestionably assets in his hands to pay debts; but how does that prove that they are so to be applied before the widow's dower is assigned? The administrator cannot obtain an order of sale for the lands, or for renting it, or for hiring out the slaves, until he show the probate court that all the personal estate has been exhausted, and that the debts still remain unsatisfied. It is the order and judgment of the probate court that invests him with the power, and he is a mere naked trustee to carry it into effect. If there were no heirs, nor descent cast, he would necessarily possess the right to take charge of the estate and prevent waste. After the personal estate has been exhausted, if there remain debts outstanding, the land and slaves in the hands and possession of the heir or devisee are assets for the payment of debts, and the administrator, by applying to the probate court can cause them to be sold, rented or hired out for that purpose. Then it is that their proceeds and profits are certainly assets in hand for the payment of debts. But it may be asked, how can he sell the lands or slaves, or rent or hire them out unless he has the possession upon the death of the intestate?. The answer is obvious. He only possesses this power by virue of and in obedience to the order and judgment of the probate court, and this clearly indicates that instead of passing immediately into his possession on the death of the intestate the law supposes they go elsewhere. If he were clothed with the possession, why require an order of court to make

any disposition of them.. When the law declares they shall be considered assets in his hands, and then goes on to point out the way they are to be so regarded, the conclusion is inevitable that they are only assets *sub modo*, and liable to all the conditions affixed to them. The idea that upon the death of the intestate the heir or devisee takes the fee in lands and slaves and title deeds, and that the possession passes immediately into the hands of the administrator, would by mere inference or conjecture, change the entire rule of the common law without any positive enactment, and virtually repeal many important provisions in the statute. It would seem to us to introduce great uncertainty and confusion into estates, and break up the sacred relations of blood and the kindred of families, which the law, in our opinion, inviolably protects and guards. The statute of Descents and Distributions certainly makes no change upon the subject. It does not pretend to point out how or to whom the estate shall descend. It simply has relation to the manner in which the estate shall be holden in parcenary, and the distribution that shall take place between those entitled to receive it. It does not say the land and slaves of an intestate shall go to the administrator, as well as the personal property. It is wholly silent as to whom they shall descend, and there is no other statute supplying this omission. The rule of the common law is thus left in full force, and we know what that is. Slaves by our act of 1840, are made to descend as land: this provision has been subsequently repealed, but independent of it the statutes furnished sufficient evidence how they shall descend. The common law cast the descent of lands of an intestate upon the heir, not only because it enabled him to perform his feudal service, but upon the high consideration of kindred attachment which would induce the heir or devisee to preserve the estate: thus enlisting his interest on the side of his affection by means of that which was real and personal, and giving that which was perishable and transitory for the payment of debts. In this respect our statute has followed the same just and wise policy. While slaves with us, in one sense of the term, are peculiarly personal pro_ perty, yet in another they have all the sacredness and value, nay even more than real estate. The inviolability of this kind of property is guaranteed by the constitution, and it enters into and forms a constit-

uent part of the basis of representation in our system of government. Many of the States of the Union where such property is held, make them descend as real estate.    To separate the possession in lands and slaves from the fee, seems to us to be warranted by no rule of law or precedent.    The fee necessarily carries with it the possession unless there be some positive enactment forbidding such conjunction.    To clothe the administrator with the possession of the lands and slaves, and still to consider the fee in the heir, and to require him to perform all and every act which properly belongs to the possession, appears to us to break up the estate into fractional divisions which would operate most injuriously to the inheritance.    This construction of the statutes certainly enables the administrator to retain possession of the property till the estate is finally settled and all the debts paid.    In the mean time what becomes of the widow's dower? He is not to assign it.    The statute expressly says it shall be assigned by the heir.    Sections 21, 24 and 25 speak of the dower in land and slaves and personal estate, and sections 22 and 23 of lands and slaves.    These provisions all show the kind of estate of which a widow shall be endowed.    And sections 29, 30 and 31 make it the duty of the heir, or if he be a minor, of his guardian to assign dower.    Sections 48 and 49 give her a remedy to recover the possession of her dower property, if it be deforced from her, with exemplary damages, and give her an action against the heir if he alien the lands or slaves out of which she may be entitled to dower.    Now is it reasonable to suppose that the legislature intended to make him answerable for the sale of that which he did not have in possession; but held therein only a fee in a kind of abeyance.    Upon the death of the intestate the personal property goes immediately into the hands of the administrator, and he holds that part which is tangible and corporeal as trustee for the widow, until her dower is assigned in it: and the lands and slaves the law casts upon the heir or divisee, and requires them to take and hold the possession and assign dower in them, and the residue is subject to the payment of debts upon the administrator's showing that the personal estate is exhausted.    The widow's right of dower is not defeated by the administrator's having possession of the personal estate, for he takes the property that belongs to her as trustee and holds it for her benefit.

The administrator holds the lands and slaves, or their rents or hire as conditional assets, and may divest the heir or devisee of the possession by an order or decree of court, whenever he shows that they are liable for the payment of debts. But this certainly does not destroy the rule of descent or deprive them in the mean time of the possession. Section 143 directs the administrator upon final settlement to distribute the balance in his hands between the widow and heirs and legatees. This section may be plausibly, if not satisfactorily explained upon the supposition that the widow may accept a pecuniary compensation by will out of the estate of her husband in lieu of dower after the payment of the debts. This explanation reconciles it with the provision of the dower act; but we do not hold it to be the true one. The section cited comes in conflict with the act of dower, and (as that was passed subsequently,) must yield to it, and be repealed by the general enactment. The historical facts before noticed explain this discrepancy or conflict between the two acts, and show what was the true intent and will of the legislature. Distribution and dower are two separate and distinct things: one is a lien created by law on the property of the husband at the time of the marriage, which necessarily takes precedence over all other subsequent accruing rights, and attaches to the specific property and is carved out of it. Distribution occurs after administration, and the payment of debts; and the estate is then divided between the heirs or legatees. The widow is not entitled to any portion or distributive share after her dower has been alloted to her, for all that goes to the heirs or legatees after payment of debts, and the administrator is bound to distribute the residue in his hands. We have no statute giving her any portion of the personal estate as a distributive share; and that part of the common law which is in force here allows her no such interest in the personal effects of her husband. There being no mode pointed out in the statute by which a widow may be endowed of the personal estate, does not in our estimation deprive her of her right of dower in this kind of property. A neglect or omission on the part of the legislature to provide a suitable remedy cannot divest her of a positive vested right with which they have clothed her. If they have granted her a legal right and it is vested in her, but omitted to give her the proper remedy,

it then becomes the duty of the courts of justice to afford the remedy. It is a maxim of common law, as well as of common sense and of natural justice, that wherever a party has a legal right he must have a legal remedy to enforce it.

The heir is allowed two months to assign dower, and during that time or until her dower is assigned the widow has a right to tarry in the mansion house of her deceased husband, and to occupy the premises and hold the farm attached to it free of rent, and during her continuance a reasonable support must be allowed her out of the estate. If her dower be not assigned within one year after the death of her husband, or within three months after demand, she must petition the court of probate in the respective counties where the lands lie, and slaves reside, to have commissioners appointed to assign her dower. Her dower must be specificaly assigned out of each parcel or tract of land, wherever it may be situated, and one third part of the slaves and personal estate must be specifically allotted to her. If the estate is not capable of division without essential injury then they must be rented or hired out, and one third of the profits annually allotted her. Her estate in dower does not vest in severalty until the assignment is made, but being tenant in possession at the death of her husband, her occupancy cannot be disturbed until after her dower is assigned. In the assignment she is entitled to the mansion house, if the estate will admit of such division. In addition to her dower, the widow is entitled by virtue of the 62d section to the articles therein enumerated unconditionally and against the rights of the heirs and creditors, whether the estate be or be not insolvent: and section 63 gives her one hundred and fifty dollars, worth of the appraised value of the personalty, provided she selects it before sale or distribution. This interest she takes absolutely against the heirs or distributees, but not against creditors.

That an appeal will lie from the decision of the probate court to the circuit court in cases of assignment of dower we think clear. The statute of dower gives no appeal by express words, but section 177 of the act of administration, declares that an appeal shall lie "in making allowances to the widow." We admit that these terms are not very precise or technical. To give to them a narrow and confined inter-

pretation would be virtually to defeat the will of the legislature. The terms "allowance to widows" relate as well to her dower interest as any other interest she takes, and was intended to include both kinds of cases. The words are general and were used in their popular sense. Again, the act of dower speaks of the widow's interest as an allowance. This shows the legislature intended to use the terms as they were generally understood, and of course they applied it to cases of dower between her and the heir and administrator.

In the present case the record shows that the administrator allowed the widow dower in the choses in action, and also in a certain amount of money or cash on hand, and that the probate court confirmed the allowance, which was excepted to, and the circuit court struck both items from the account. It was certainly right not to allow her dower in the choses in action. They constitute no part of the personal estate of the husband within the meaning of the statute. They were not reduced to possession at the time of his death and consequently no right of dower attached to them. But the rule is different in respect to the money or cash on hand. That is unquestionably a corporeal interest reduced to possession, and of course the widow had a right to be endowed of it as it formed a portion of the personal estate of her deceased husband.

The construction we have put upon the law of dower and administration, we regard as every way warranted by the general tenor and spirit of the act, and by the just and enlightened policy that dictated them. The legislation of our sister States has in almost every instance enlarged the widow's dower, and this alteration we have not only adopted, but carried farther than any of them, and in our opinion it strictly corresponds with the improvement of the age and the interest of justice. We have carefully and maturely considered the whole subject, and should it hereafter be discovered that we have been mistaken in any one of our conclusions we shall be consoled by the reflection that our interpretation of the statutes has protected the interest of those who are least able or inclined to take care of themselves.

As the circuit court erred in not allowing the widow dower in the money in the hands of the administrator, for that reason its judgment is reversed.

RINGO, C. J. *dissenting.* The principal question presented by the record and assignment of errors in this: is the widow, upon the death of her husband, entitled to dower of the personal estate of which he died possessed? This question, from the many interests involved in and affected by it, assumes an importance scarcely inferior to any which has arisen or is likely to arise in the jurisprudence of this State; and from the loose and seemingly conflicting legislation on the subject it is rendered somewhat perplexing. It is conceded on all hands that no such right exists at common law, nor did ever exist in this State prior to the taking effect of our Revised Statutes; which was not until the 20th day of March, 1839. But on the part of the appellants it is urged that such right is thereby created; and in support of this conclusion they rely upon the provisions contained in the 20th, 21st, and 24th sections of ch. 52, of the Revised Statutes, which contain the following provisions, viz: "Sec. 20. A widow shall be entitled as part of her dower to the one-third part of the slaves whereof the husband died seized or possessed during her natural life, and one-third part of the personal estate in her own right." "Sec. 21. If a husband die, leaving a widow and no children, such widow shall be endowed of one-half of the real estate, and also one-half of the slaves of which such husband died seized, and one-half of the personal estate, absolutely in her own right." "Sec. 24. In cases of provision made by will for widows in lieu of dower, such widow shall have election to accept the same, or be endowed of the lands, slaves, and other personal property of which her husband died seized." If these provisions stood wholly disconnected and entirely independent of other statutory provisions relative to, and prescribing what disposition shall be made of the estates of persons deceased, the conclusion that they were designed to create for the widow a right of dower in the personal property of her husband might with great reason and justice be deduced therefrom: or at least a legal right of property absolute and unqualified to one-third part thereof without regard to the debts of the testator or intestate or the expenses incident to the administration of his estate. But they do not stand alone and cannot be considered without reference to such other statutory provisions as have been passed in relation to the disposition of such estates; they being as I conceive unquestionably laws

*in pari materia*, which according to well established rules for construing statutes, must be considered together, and, if practicable, be so interpreted that every part and provision may stand and be operative. It is therefore a duty incumbent upon this court to ascertain from a careful consideration of all the provisions of law on the subject the true rule thereby prescribed in regard to the disposition to be made of the estates of deceased persons, because there is no other mode by which the rights of the widow in respect thereto can be truly ascertained.    The statute providing for the administration of estates of deceased persons, by express and explicit declaration, makes it the duty "of every executor and administrator immediately after receiving his letters to collect and take into possession the goods and chattels, moneys, books, papers, and evidences of debt of the testator or intestate, except the property reserved by this act as the absolute property of the widow, and he shall make a true and perfect inventory thereof, describing the books and papers, the debts due or to become due to the deceased, the names of the debtors, the date of the contract, the amount of interest due thereon, the rate of interest, and such further description as will render it a perfect inventory of the estate:" and requires him to annex thereto an affidavit, stating, "that it is a full inventory and description of all the moneys, goods, chattels, books, papers, and evidences of debt, and of all debts due or becoming due so far as he has been able to ascertain them, except the property reserved as the absolute property of the widow:" and to file such inventory in the office of the clerk of the court of probate, within sixty days after the letters are granted; and binds them "immediately after having the personal estate of the deceased collected, to cause the same and also the slaves to be appraised," and makes such inventories and appraisements evidence for and against the executor or administrator.    *Rev. St. Ark. ch.* 4 § 24, 43, 44, 45, 51, 56.    The 62d section of the same statute provides "that in addition to dower, a widow shall be allowed to keep as her absolute property all the wearing apparel of the family, her wheels, looms, and other implements of industry; all yarn, cloth, and clothing made up in the family for their own use, such grain, meat, vegetables, groceries and other provisions on hand as may be necessary for the subsistence of the

widow and her family for twelve months, and as many beds, with bedding and such other household and kitchen furniture as shall be necessary for herself and the family of the deceased residing with her and under her control; nor shall any property acquired by the widow be sold to pay any debts of her husband contracted before marriage, nor shall such property be embraced in the schedule of the effects of his estate should the same be deemed insolvent."

The property in this section specified is, I apprehend, to be given to the widow, to whom it descends immediately from the husband by operation of law, without regard to the debts of the testator or intestate, and therefore, as it is in no event subject to the payment of his debts or the expenses of the administration of his estate, the executor or administrator succeeds to no right and takes no interest whatever therein and for this reason is not required to make any inventory thereof. And this, and this alone is the property referred to in the 43d and 44th sections of this statute quoted or cited above as "the property reserved by this act as the absolute property of the widow."

The 63d section declares that "in addition to the property specified in the preceding section, the widow, when the estate is not insolvent, may take such personal property as she may wish, not to exceed the appraised value of one hundred and fifty dollars, and the executor or administrator shall deliver to the widow, such articles as she may select, not exceeding the value aforesaid, and take her receipt therefor, which shall be a good voucher in the settlement of his accounts." But the 64th section provides that "the widow shall apply for such property before it is distributed or sold and not after."

The design of the provisions last quoted is, as I conceive, to give to the widow, as between her and the other legatees or distributees of the estate, but not against creditors, the sum of one hundred and fifty dollars, in addition to the property which she takes by virtue of the provisions of the 62d section of this statute; provided she applies for it and receives the property at its appraised value, before it is distributed or sold; otherwise she forfeits this right, and can receive such distributive share only upon the settlement by the executor or administrator and the distribution of the estate, as the law, independent of this provision, declares she shall receive; that is, the one-third part of what

remains after the debts and expenses of administration are paid. If this grant of $150 worth of property should even cover the whole of the distributive estate, the widow if her claim is properly presented, is entitled to receive it to the exclusion of the legatees or heirs.

The 65th section prescribes that "every executor or administrator, *as soon as practicable after the appraisement shall sell at public sale, all the personal estate of the deceased, except slaves and specific bequests,*" unless the sale is forbidden by the testator, in which event it shall not be sold, unless the sale thereof is necessary for the payment of debts. The bills of sale are required to be filed in the office of the clerk of the court of probate within thirty days after the sale. And the executor or administrator shall, according to the provisions of the 79th section of the same statute, on settling his accounts, be charged with, and be accountable for the net proceeds of the sale of *all* personal property sold by him under the provisions of this act, notwithstanding the same may amount to more or less than the appraised value thereof. And he is required by the 105th section annually to present to the probate court for settlement "a fair written statement or account current in which he shall charge himself with the whole amount of the estate according to the sales-bill and appraisement, including all debts due the estate, and money on hand at the death of the deceased, and credit himself with all sums of money lawfully expended in settling such estate, either by the payment of debts or otherwise, exhibiting with such account the receipts and vouchers for all moneys paid out." And the 121st section requires the court at every settlement to "ascertain the amount of money which may have come to the hands of the executor or administrator *from all sources,* and the amount of claims allowed by the court, or passed by the executor or administrator against the estate; and if there should not be sufficient to pay the whole of the debts and expenses of administration, the money remaining after the expenses of administration are paid, shall be apportioned among the creditors according to the provisions of this act." From the various provisions above it seems to me perfectly clear that *all* of the personal estate, except slaves, and that to which the widow succeeds and takes unconditionally under the 62d section of this statute, passes to the executor or administrator, who is bound to collect and take the

Hill's Administrators *vs.* Mitchell et al.

same into his possession, as soon as practicable after his right thereto accrues, by the death of the testator or the grant of administration, and make a complete inventory thereof, and cause the property to be appraised and sold, unless the sale be forbidden by the will, and even then if necessary to pay debts, or the widow demands and receives $150 worth of it at the appraised value; in which event the residue must be sold. And that such assets constitute the primary fund for the payment of debts, which if necessary, must be wholly appropriated to the payment of the debts of the testator or intestate and the expenses of administration. But if it is not thereby exhausted, the residue, on final settlement made with the probate court, of the account of the administration, must then be distributed "to the widow and heirs or legatees" according to the provisions of the 143d section of this statute, which enacts that "when any executor or administrator shall have made final settlement of his accounts with the court of probate, by which the balance in his hands distributable *to the widow* and heirs or legatees shall be ascertained, and shall have paid over *to the widow*, distributees, or legatees, or the guardian of any minor legatee or distributee, their share of the estate, such executor or administrator may file in the probate court an abstract of such payments, and the receipt of the widow, legatees, distributees, or guardian," which at the next term "if no objection be made thereto and none appear from the face of the papers" shall be allowed and entered of record, and the executor or administrator discharged from so much of the balance found against him on such settlement "as the persons whose receipts are so allowed are entitled to." This statute unqustionably contemplates and recognizes the right of the widow to some portion of the residue of the personal estate remaining in the hands of the executor or administrator, after he has paid the debts of the testator or intestate, and all expenses of the administration thereof. Yet this cannot be a right of dower; because in legal contemplation dower is a right which attaches upon the marriage in favor of the wife upon the estate of the husband, to which the law extends and applies it; it remains inchoate during his life, but becomes consummate or complete immediately upon his death; according to the common law it attaches to real property only, in which the husband during coverture is seized of an estate of inheri-

tance, and it is a right which no act of his can defeat.    Yet like every other right of property it derives its existance from the municipal au-- thority, and may be at any time enlarged, restricted, modified, or even abrogated by law, but until such modification is *expressly de-- clared, and clearly and explicitly 'defined,* it must be regarded as a right which attaches upon property of which the husband is seized during the marriage, a specific·portion whereof *the widow is entitled* to receive upon his death, and to hold in her own right during her na-- tural life against his heirs, legatees and creditors.    If this be true, and I think it cannot be doubted, then it is perfectly clear-that the right of the widow in the personal estate of her deceased husband, as recog-- nized and provided for by the 145th section of the administration law, is not dower, but the right to a distributive share of the surplus remain-- ing in the hands of the executor or administrator after all demands against the testator or intestate are satisfied; which accrues when such surplus exists, but otherwise, or until then, has no existence whatever, and can seldom, if ever, be satisfied with the specific property of which the testator or intestate died seized; because in the administration of the estate such property is expressly required by law to be sold, with-- out any election in the administrator to preserve and distribute it in *specie.*    Now, if it be true that the widow has in the life of her hus-- band an inchoate interest in the property of which he is seized, and in which the law gives her dower, which right becomes consummate and perfect upon his death, it is certainly true that his personal repre-- sentative possesses no legal authority to sell that portion of the estate which her right embraces, because the estate immediately vests in her; and the heir, upon whom the descent is cast, is bound to assign to her such portion of the estate to her separate use, and if he fails to do so, she may procure an assignment thereof in the manner prescribed by law, whether she takes it absolutely or for life only; and he as the re-- presentative of her deceased husband possesses no interest in it, and therefore, a sale thereof made by him without her concurrence or as-- sent, could neither divest her right to the property nor invest the pur-- chaser with any right thereto: consequently all the statutory provisions requiring him to collect, take into his possession, inventory and sell *"all the personal estate of the deceased except slaves and specific bequests,"*

Hill's Administrators *vs.* Mitchell et al.

and the property reserved by the administration law as the absolute property of the widow, and administer the same together with the money of the deceased on hand at his death, and such money or assets as may be collected by him on the book accounts, credits or choses in action of the deceased, by first paying the expenses of the administration, and then the expenses of his funeral and his debts, and lastly distributing the residue in his hands "to the widow and heirs or legatees" must be inoperative as to one-third part of the estate, if the widow is by virtue of the 20th section of the statute concerning dower, entitled to one-third part of the personal estate whereof her husband died seized or possessed: because by this interpretation they seem to me to be in direct and irreconcilable conflict. So that of course, if no other construction can be justly given to them, whereby such conflict may be avoided, both cannot stand, and of necessity, one must yield to the other. But they can, in my opinion, by a different interpretation well warranted by law, stand and operate together, and the design of the legislature be truly and fully accomplished; and if this be so, they unquestionably ought to receive such construction. To do this, nothing is required but to consider the interest granted the widow in the personal estate of her deceased husband, by the 20th and 21st sections of the dower act above quoted, what the statute itself declares it shall be, an *absolute right of property*, instead of a limited or life estate, which emphatically and in all legal parlance, is the extent of interest or estate in property given or received as *dower*. Although I concede the authority of the legislature to grant to the widow any estate in the property of her husband commensurate with that held by him at the time of his death; yet I insist, that an estate, not for life but for a greater or less period of time, is not dower nor in the nature of dower, although it may be given in the place of dower; and not being dower, the incidents which attach to an estate in dower, do not necessarily attach to it, and will not unless it be so expressly or by necessary implication, provided or declared by law: indeed, being an estate unknown to the common law, it has no incidents except such as are declared by the statute creating it. And as none are declared by the statute in question, the right of the widow in the personal estate of her deceased husband, does not vest until his debts and the ex-

penses of the administration are paid; when she becomes entitled to an estate absolute and unlimited in the one-third part of the personal estate of every description remaining in the hands of the executor or administrator, who is bound to distribute the same to her, at the same time that he is bound to make distribution to the heirs and legatees according to the provisions of the 143d section of the administration law; consequently the law makes no provisions for assigning or setting apart to the widow any portion of the personal estate as dower. And if there is no child, she is in like manner entitled to one-half of the personal estate.

This, for the reasons assigned already, I, upon the most careful and mature consideration of the subject, which it has been in my power to give it, consider to be the true interpretation of all the statutory provisions relating to this right of the widow, and the true rule thereby prescribed in respect to her right in the personal estste of her deceased husband; that is, she takes the property mentioned in the 62d section of the statute concerning administrators, absolutely and unconditionally, without regard to the solvency or insolvency of the estate. She also takes absolutely and unconditionally against the heirs or legatees, but conditionally against the creditors, one hundred and fifty dollars, worth of the property at its appraised value; and she takes absolutely and unconditionally, by virtue of the 30th section of the statute concerning dower, the one-third part of the personal estate remaining after the debts and expenses of administration are paid, if the testator or intestate left a child or children or any lawful descendant living, otherwise she in like manner takes one-half thereof, to be distributed to her by the executor or adminstrator, according to the provision of the 143d section of the administration law. Such disposition of the estate appears to me to reconcile all the seemingly conflicting provisions of the various statutes relating to this subject, and give to each such operation and effect as it was designed to have, preserves not only to the widow, but likewise to all the parties interested in the estate as heirs, legatees, or creditors, a fair and just portion of the estate; whilst any interpretation of the statutes by which any different disposition of the personal estate is made, not only gives the widow an undue portion of the estate, to the prejudice of the heirs or legatees and the credtors,

but furthermore, brings the various statutory provisions on the subject into irreconcilable conflict. Therefore the judgment of the circuit court disallowing the widow dower in the personal estate of her deceased husband, ought in my opinion to be affirmed—for which reason I dissent from the opinion of this court pronounced in this case.

Judgment reversed.