No. 16,806.

DURBIN ET AL. *v.* REDMAN ET AL.

WILL.—*Executory Trust.—Devise of Use and Benefit for Life, and then to Heirs of Devisee.—Devisee Dying Childless.—Second Husband Inheriting as Her "Heir."*—A testator bequeathed a certain portion of his real and personal property, "in equal proportions," to his sons and daughters, providing that "the amount to V. shall be for her use and benefit during her lifetime, then to her heirs and their assigns." Other portions of the will created an executory trust, giving the executors power to sell such real estate, and to purchase other lands with which to fill the provisions of the will. The executors conveyed land to V., under the executory trust and pursuant to a decree of court, "for her use and benefit during her lifetime, and then to her heirs and their assigns in manner and form as prescribed by" the will, direct reference being made, in the deed of conveyance, to the will. After the conveyance V.'s husband died, and she remarried. Her second husband survived her, but she left surviving her no child, nor descendants of a child, nor neither father nor mother. Thereafter her second husband died, leaving several children as his only heirs at law.

*Held,* that such second husband, under the will, was the only "heir" of V., and that his children inherited the estate from him to the exclusion of the brothers and sisters of V.

From the Floyd Circuit Court.

*J. H. Stotsenburg* and *E. B. Stotsenburg,* for appellants.

*A. Dowling,* for appellees.

HACKNEY, J.—Isaac Redman died testate, in Floyd county, in 1856, leaving a widow, two sons, Robert and William, two daughters, Maria Baird and Virginia Siceloff, and a grandson, Henry C. Redman, for each of whom provision was made by his will, which will is copied in full in the case of *Siceloff* v. *Redman's Admr.,* 26 Ind. 251. After certain specific devises and bequests the following disposition was made:

"I devise and bequeath the entire remaining amount of my property, in equal proportions, to my son, Robert

L. Redman, and my daughters, Maria Baird and Virginia Siceloff. * * * The amount to Virginia shall be for her use and benefit during her lifetime, then to her heirs and their assigns. * * * ''

By further provisions of the will, as was held in the case cited, an executory trust in the executors was created with power to sell the real estate, of which the testator died seized, and to purchase other lands with which to fill the provisions of the will. The real estate, involved in this suit, was, under said executory trust, and pursuant to said decision, conveyed to ''Virginia Siceloff for her use and benefit during her lifetime, and then to her heirs and their assigns in manner and form as prescribed by item 4th of the last will of Isaac Redman, deceased. * * * ''

Thereafter the husband of Virginia Siceloff died, and in the year 1872 she married William S. Durbin. In December, 1890, she died, leaving her husband, Durbin, surviving, but having no child or descendants of a child, and neither father nor mother surviving her. In April, 1891, said William S. Durbin departed this life, leaving the appellants as his children, and only heirs at law. This action was by the appellants to quiet title against the appellees, who succeeded in the claim that they were the owners of said real estate as the descendants of said Isaac Redman and of the brothers and the sisters of said Virginia.

It is conceded that, as decided in *Siceloff* v. *Redman's Admr.*, *supra*, the rule in Shelley's Case has no application to the questions here presented, and, necessarily, that said Virginia, held but a life estate in said lands. It is necessary, therefore, to treat the word ''heirs,'' employed in the will, and the deed, as one of purchase and not of limitation.

It is manifest that William S. Durbin did not take

any estate in these lands from his wife, since she held but a life estate, and left no interest to descend from her. It is equally manifest that the appellees can not take, by the language of the will, from the testator, since the direction of the remainder is to the heirs not of the testator, but of Virginia. Who then stands in the relation of the heirs to Virginia? Much discussion has been devoted to the construction of the word "heirs" as frequently employed in the will, the parties agreeing that the intention of the testator, in the use of the word, should control. The appellees have contended that the word was intended as synonymous with "children," and as in the common law sense, while the appellants have urged that it was intended to include all who might stand in the situation to take, under the statute, by descent from Virginia, if she had died seized in fee. It is agreed that under the law, at the time of the execution of the will and at the death of Virginia, her husband would have been her only heir. In ascertaining, therefore, who stood in the relation of heir to Virginia, we have but to determine whether the word "heirs" was employed by the testator as the equivalent of the word "children."

By the first item of the will it was provided that the testator's wife should receive what "the present law defines for the widow's dower." By the adoption of the word "dower," appellee's learned counsel insists, the testator must be held to have understood that the law, as it existed prior to 1852, was still in force, and, with such understanding, that he employed the word "heirs," in subsequent items, in the common law sense and as implying those born in lawful matrimony, and succeeding "by descent, by right of blood and by act of God" to the estate of their ancestor. It is true that with the act of 1852 tenancies in dower were abolished, but, even to

this time, lawyers and the courts have spoken of the provision for the widow, which is in lieu of that abolished, as a "dower." Webster's International Dictionary defines "dower" as "the provision for a widow on her husband's death," and such is the plain or ordinary and usual sense in which it is employed, though the tenancy in dower, or the technical use of the word, as employed formerly to define a mere life estate, has been abolished. The direction that the provision intended for the wife should be by "the present law," indicates a knowledge that the prior law had been superseded.

Item two of the will provided an estate for William "during his life, and for his wife, should she outlive him, so long as she remains a widow, then to belong to said *William's heirs* and their assigns." By the third item, Henry C., the grandson, was given an estate for his life, and "then to his heirs and assigns." By the fourth item, above quoted in part, Maria was given an estate for life, and "then to her heirs and assigns." It is claimed that in each of the instances given, the word "heirs" was employed as indicating "children," and, therefore, disclosing the sense in which it was used in the devise to Virginia. In no instance does the will disclose that any devisee was possessed of children, and it would be as difficult to discover the intention so claimed, in these instances, as in the devise to Virginia.

By the sixth item, it was directed that the testator's real estate in Louisville should not be disposed of without the consent of the executors, but that the rents should "be divided between my heirs, according to justice, taking this my will for the criterion for division." By the seventh item the testator said: "My heirs" shall not enforce a sale or division of the real estate for ten years.

It is insisted that by these provisions the testator in-

Durbin *et al. v.* Redman *et al.*

dicated his understanding that the word "heirs" meant "children." Strictly speaking "heirs" are not "devisees," but are those who take by right of blood and under the law, and not by will, as devisees. However, we think it entirely certain that the word "heirs" was intended by the testator as having reference to devisees under his will. If we could limit its application to children we might be guided to the conclusion that the word "heirs," as employed throughout the will, was intended to mean "children," but, unfortunately for that conclusion, the devisees included the widow, children, a grand child, a daughter-in-law, and, possibly, sons-in-law. It will be rembered also that in the case of *Siceloff* v. *Redman's Admr., supra,* this court, in construing the will now before us, held that the word "heirs," employed in the devise now under consideration, was a word of limitation, which, ordinarily, would have admitted the rule in Shelley's Case, but the application of the rule was denied only because of the existence of an executory trust. The conclusion then reached that the word was one of limitation is not in harmony with the idea that it was employed to point a devise to children. It was, and could have been only, upon the idea that the devise over, of the remainder in fee, was to heirs generally. By reason of the peculiar rule, with reference to executory trusts, applied to this will, we are now required to hold a devise to heirs generally as in the sense of a purchase. The only heir of Virginia to take as a purchaser from the testator was her widower.

This conclusion leads to a reversal of the judgment of the circuit court, and the same is therefore reversed, with instructions to sustain the motion for a new trial and for further proceedings in accordance with this opinion.

Filed Apr. 10, 1895.