# Wheeling.

## SUSAN A. ENGLE *vs.* JAMES W. ENGLE, EXECUTOR.

### January Term, 1869.

1. As the title to dower is consummated by the husband's death, when the wife is endowed she is in from the death of her husband, and like any other tenant of the freehold she takes upon recovery whatever is then annexed to the freehold, whether it be so by folly, mistake or otherwise.

2. By the 8th section of chapter 110,* Code 1860, if land, on which there is a growing crop, pass by will to devisees, the widow is entitled to one-third of the crop.

3. E. devised his lands, subject to the dower of his wife, and prior to his death a crop of wheat had been sown thereon, which was harvested by the executor before a decree was had assigning dower.  HELD:

> That as the widow was entitled at the death of the husband to be endowed of one-third of the land with the crop growing on it, so if the crop be severed before the assignment of dower she is entitled to be endowed of the land in like manner, and of one-third of the crop thus severed, for by the severance the estate had been diminished in value to the amount of the crop.

John Engle died on the 18th day of October, 1865, testate, in Jefferson county.  He devised his lands equally to his four sons "subject to the dower of his beloved wife," Susan A. Engle.  Prior to his death a crop of wheat had been sown on his lands, which was harvested by his executor, James W. Engle, in the wheat harvest of 1866.  The net proceeds of the wheat amounted to 2,756 dollars and 45 cents.  The widow brought suit against the executor to the August rules, 1867, to recover one-third of the value of the

---

* 8. Until her dower is assigned, the widow shall be entitled to demand of the heirs or devisees one-third part of the issues and profits of the other real estate which was devised or descended to them, of which she is dowable; and in the mean time may hold, occupy and enjoy the mansion house and [curtilage, without charge; and if deprived thereof may, on complaint of unlawful entry or detainer, recover the possession with damages for the time she was so deprived.

COURT OF APPEALS OF WEST VIRGINIA.    247

Jan'y Term,              Engle vs. Engle, ex'r.              1869.

crop. On the trial the foregoing facts were agreed and that the crop of wheat, which had been sold by the executor, came from the entire tract of land of which the testator died seized, as well from that which was afterwards assigned as dower, as that which was allotted to the devisees. It was also further agreed that the personal assets, apart from and exclusive of the crop of wheat was not sufficient to pay the debts left by the testator; and that the widow had instituted proceedings for the assignment of dower in April, 1866, and an interlocutory order was entered by the court in June following, before the crop of grain was cut, declaring the widow to be entitled to dower and appointing commissioners to assign the same to her; but in consequence of some difficulties which arose between the widow and one of the devisees as to the right to have the mansion house, the final decree confirming said·assignment of dower was not entered until the April term, 1867. On the facts agreed the court held the widow not entitled to one-third of the crop and gave judgment against her for the costs; she thereupon applied to this court for a writ of supersedeas, which was granted.

*Charles J. Faulkner* for the plaintiff in error.

It is conceded that if the crop of wheat, which is the subject of controversy in this case, was personal assets at the death of the testator, the widow has no claim, on the facts agreed, to participate in it. It is with equal confidence submitted, that if it was not personal assets, but a part of the freehold, that the dower of the widow attaches to it as to any other rents, issues and profits derivable from the land of which the testator died seized.

As a general rule of law, the crop growing on the ground is a part of the freehold. A sale of the land carries with it the growing crop. A *fieri facias* can not be levied on grain in the ground. Nor is it the subject of larceny. To this general rule some exceptions have been established for the encouragement of husbandry and to compensate for the labor and expense of tilling, manuring and sowing the land.

Thus as between the tenant for life and the reversioner the *fructus industriales*, produced annually by labor and industry, pass to the executor of the tenant for life. So in the case of the owner of the inheritance, these *emblements*, as they are termed, as between the executor and the heir, pass to the executor. These exceptions, however, cease with the principles of public policy, upon which they are founded. For if the land is devised, the general rule of law takes effect, the growing crop passes to the devisee and the executor is excluded. Williams on Executors, 681; Ram. on Assets, p. 190; 1 Lomax on Executors, p. 243; 8 East, 243. The present is a case of a devise of the land upon which this crop was sown. No question here arises as between the executor and the widow. The executor as such can not claim that crop as assets of the testator, and the record presents a conflict of interests solely as between the widow and the devisees.

Dower, we are informed by Lord Coke, is one of the three principal favorites of the common law. Co. Litt., 124, 6. It was protected by *Magna Charta*. It is well styled *tabula in nau fragio*. It is given by the law *ad sustentationem uxoris et educationem liberorum*, for the sustenance of the wife and the nurture and education of her children. And in this connection Chief Baron Gilbert well remarks: "If Baron sows land, dies before severance, the wife shall have the *third* part of the land *so sown*, for her *dower*, for she shall not stay for her *subsistence* a whole year till the corn be removed." 1 Gilbert, Law of Evidence, p. 498. If the present claim is decided adverse to the widow, near two years will have elapsed from the death of the testator before she receives a bushel of wheat from the land for the sustenance of herself and children.

He would proceed first, to examine the appellant's claim to a share of this crowing crop upon the doctrines of the common law; secondly, upon the construction of our own statutes bearing on that point.

1st. Upon the principles of the common law, regarding the case as between the widow and the devisees.

As the title to dower is consummate by the husband's death, when the wife is endowed, she is in from the death of the husband, and like any other tenant of the freehold, she takes upon a recovery whatever is then annexed to the freehold.    4 Kent, p. 66.    When dower is ascertained by assignment, the estate does not pass by assignment, but the seizen of the heir is defeated *ab initio*, and the dowress is in, in intendment of law, of the seizen of her husband, and this is the reason that neither livery nor writing is essential to the validity of an assignment *in pais*.    4 Kent, p. 60.    The widow claims paramount to the heir.    Her estate is a continuation of that of her husband, and upon assignment she is in by relation from her husband's death.    4 Kent, p. 62.

In *Bishop* vs. *Bishop*, decided 28th of April, 1841, by the high court of chancery, England, the widow was held entitled to one-third of the proceeds of timber cut from the land by the heir, before assignment of dower.   Jurist, p. 931.

These principles incontestably gave to the widow a right as against the devisee to the rents and profits of dower land withheld from her possession, from the death of her husband, but as dower was a real action, and no damages were at one time recoverable at common law in real actions, this defect was supplied by the statute of Merton, which gave her as against the heir the right to recover damages from the death of the husband.   By damages, says Parke, are to be understood the profits of the third part since the death of the husband.   Parke on Dower, p. 306.

The position being then established, that this growing crop is not personal assets, demandable by the executor as such, but a part of the freehold passing to the devisees, the conclusion is inevitable that dower attaches to it, and she is entitled to her proportion of the rents, issues and profits from the death of the husband.

But suppose this were not the case of a devise of land— suppose it were a case of an ordinary descent, is it so clear that as between the executor and the widow, the executor would be entitled to the whole of this growing crop?

Bracton, in his admirable and authoritative treatise, "de

legibus et consuetudenibus Angliæ," Lib. 2, Fol. 96, 5, 2, says: "Infra quadraginta dies assignetur dos legitima, secundum quod tunc fuerit *culta* vel unculta, cum *fructibus et redditibus* et omnibus aliis pertinentis, et nihil refundatur executoribus vel haeredibus pro *cultura* et *cura,*" &c.    Edition in State Library, printed 1539.

Roll, in his abridgement, says:

" Si baron emblee terre et morust devant severance et son feme est endow de cest terre issint emblee pur sa 3 parte, el avera l'emblements et nemi l'heire necl'executor, car el est d'aver la terre fuerut culta vel inculta cum fructibus et redditibus."    Edition 1668, State Library, p. 727, sec. 16.

Danvers, Cunningham, and the other ancient compilers embrace the same doctrine.

In the case of *Fisher* vs. *Forbes*, 2 Equity Cases Abridged, p. 392, (1734), the testator died in May, leaving a crop of hops growing in the ground which was not severed until August.    The question was whether his widow, a jointress, was entitled to the crop, or the executor.    The master of the rolls at first inclined to think the hops belonged to the widow in right of her emblements, but in regard to cases cited as adjudged, that in case of dower, she shall have the emblements, because dower is considered as an excressence or continuation of the estate of the husband, but jointure is not, and distinguishing the case of a jointress from a dowress, he adjudged the growing crop to the executor.

Williams, in his work on Executors, says, page 664: "Where the deceased was seized in fee simple of land, his personal representatives are entitled to emblements as against the heir, though not as against the dowress.    Again, page 638, he says: " The executor of a jointress is entitled to emblements of the estate settled in jointure; but she is not entitled to them at her husband's death, to the exclusion of her husband's executor, as a dowress is.    Vol. 1.

See, to the same effect, 2 Redfield on Wills, p. 141, sec. 3; 1 Roper on Husband and Wife, p. 426; Washburn on Real Property, 103, 169; Gilbert's Evidence, p. 498.

This ancient and well established doctrine, is further illustrated by referring to the statute of Merton.

By the principle of the common law, every tenant for life was authorized to dispose of the crop growing at his death. Why is it then, that it required a special provision by the statute of Merton, to authorize a dowress to dispose of the crops growing in the ground at her death? The reason is given in our ancient writers, and it is, that as she was entitled to a share of the growing crop, at the death of her husband, it was thought that she ought in consideration of that special privilege which she thus enjoyed, to relinquish the crop growing in the ground at her death. But the statute of Merton corrected this erroneous deduction from that privilege, and placed the widow as to the crop growing at her death, upon the same footing of all other tenants for life. Bracton, Lib. 2, Fol. 96; 2 Coke's Institutes, p. 81; 1 Roper on Husband and Wife, p. 426; Washburn on Real Property 103, 169.

This provision of the statute of Merton, which was only intended to remove a doubt, and which at the time was held to be but in affirmance of the common law, is a part of our Code at this day. Code of 1860, p. 533; 2 Co. Institutes, page 81.

2. But whatever question or difficulty may arise, if indeed there can be any, as to the rights of the widow on common law principles, to her share of the growing crop, there can be none upon a review of our legislation bearing upon the subject.

The duty imposed by the common law upon the heir to assign to the widow her dower, was often neglected, to her great inconvenience and injury. To guard against this inconvenience, and at the same time to provide the widow with the present means of subsisting herself and children, it was enacted, 6th of December, 1792, that "till dower shall be assigned it shall be lawful for the widow to remain and continue in the mansion house and mesuage or plantation thereunto belonging, without being chargeable to pay the heir any rent for the same." This statute is plain in its

language, and has given rise to very little controversy in our courts. There is but one case, *Grayson* vs. *Moncure*, 1 Leigh, 449, in which it is referred to. In that case the widow received from the administrator, Moncure, one-third of the net proceeds of the crop of wheat growing on the land at the death of her husband, but the decision of the court did in no respect turn upon that point. Chancellor Kent in referring to this statute, which was also the law in New Jersey, and many other States, says that it gave her a freehold for life, unless sooner defeated by the act of the heir; that upon the death of the husband, the widow is by law deemed in possession as a tenant in common with the heirs to the extent of her right of dower, and that her right of entry does not depend upon the assignment of dower. 4 Kent., p. 62.

The supreme court of New Jersey has further declared, in view of this statute, that it is the duty of the heir to assign dower without demand, and that no demand is necessary to enable the widow to recover the value from the death of the husband. *Hopper* vs. *Hopper*, 2 Zabriskie's Reports, p. 715.

The revisors, to obviate any doubt such as was suggested, 1 Leigh, p. 449, provided that "until dower is assigned, the widow shall have a right to occupy and have the rents and profits of the mansion house and the tract of land on which it is." But if she be the guardian of the heirs or devisees, to account to her wards for two-thirds of the issues and profits.

This section of the revisors was not adopted by the legislature, but in lieu of it, the Code provides,

1. That the wife shall hold, occupy and enjoy the mansion and curtilage without charge, until dower is assigned, and further shall be entitled to demand of the heirs or devisees one-third part of the issues and profits of the other real estate which was devised or had descended to them. Sec. 8th.

2. Damages for detention of dower are given against the heirs and devisees, for such time after the husband's death

as they have withheld dower, not exceeding five years. Sec. 11th.

3. The right of entry is given to her, and an action of ejectment would now lie to recover dower before it is assigned.

The position once assumed, that this growing crop passes under the will to the devisees, and it follows inevitably from these provisions of the statute, that the devisees must account to the widow for the one-third of its net proceeds. It is a part of the "issues and profits" of the real estate, accruing since the death of the testator, and by express language secured to the widow.

*Stanton & Allison* for the defendant in error.

This case raises a question as to whether a crop of wheat growing upon decedent's land, and sowed by him, was properly gathered by the executor and appropriated to the payment of debts, or withheld by him for such purpose from the widow, who claims one-third thereof.

The decedent died October 18, 1865. The crop had previously been sowed. It was reaped by the executor the following harvest.

By the will of the decedent John Engle, the land from which the crop was taken was devised to his four sons, subject to the dower of the widow. *All the personal estate* is directed to be sold and the proceeds applied to the payment of debts and funeral expenses, and if deficient for such purpose his four sons were to pay the balance.

In April, 1866, the widow filed her bill for dower, and obtained an interlocutory decree in June, 1866, before the crop was severed, declaring her entitled to dower and appointing commissioners to assign it, but a controversy here arose between the widow and heir as to the mansion house, by reason of which the final decree, confirming said assignment of dower, was not entered until April term, 1867.

The counsel for the plaintiff in error admits that by the common law the crops sowed and growing at the death of the intestate, upon the lands which descend to the heir,

are personal assets and go to the personal representative, but he claims that where land is devised the crops pass to the devisee.

This distinction between the heir and a devisee seems to have been made by some of the common law cases. Lord Ellenboro and others have pronounced it a capricious one. It is to some extent changed in Virginia. 4 Rob., p. 707, (new). See *West* vs. *Moore*, 8 East, 343; Toller, 202; 3 Coke's Institutes; Hargrave's Notes, 55b; 1 Williams on Executors, 455–6; 1 Lomax on Ex., 243. But the latter is careful to say such is the law in England.

But the presumption that the testator intended to give the crop with the land may be rebutted by words in the will that show an intent that the executor shall have the emblements. 1 Williams on Executors, 456; Toller on Executors, 202; 2 Redfield on Wills, 141; 1 Lomax on Ex., 243; *Fleming* vs. *Bolling*, 3 Call., 75.

Now it is pretty clear that the testator did intend the executor should have the crops. "All my personal property, &c., shall be sold to pay my debts. I will and bequeath all my *land*, &c."

"All my personal property," will include the crops, which are personal property and not realty within the statute of frauds. Toller on Executors, 150–202; 1 Williams on Executors, 352, note R; 2 Redfield, 241, note 15; 3 O. S. R., 438; 4 O. S. R., 71.

It cannot be presumed that the testator intended to give the crop to the devisees of the land unless it were beneficial to them, besides that is a question between the executor and devisees. The devisees do not claim the crops, and it is to their interest to have them pass to the executor, as they (his four sons) have to pay any deficiency left after the personal property is exhausted.

The widow's dower does not attach to crops, except in some cases where they are growing upon land assigned to her in dower. 14 Ohio Rep., 418; 2 Scrib. on Dower, 679; Code, 533, sec. 9. After the assignment (and there is no assignment until after the confirmation) she may reap, but

she has no right of property in any crop gathered before the assignment to her by metes and bounds, and confirmed. See Williams on Ex., p. 458, and 2 Red. on Wills, 141; also Lomax and Toller; 2 Scrib. on Dower, 26, 728.

A devise of the land, without adding appurtenances or the like, will not pass crops to the devisee. 1 Wash., 62, *Shelton* vs. *Shelton.*

But whatsoever might be the result under the common law rule, the crops passed to the executor in Virginia. *Shelton* vs. *Shelton*, 1 Wash., 53, 62; *Fleming* vs. *Bolling*, 3 Call, 66; Lomax on Executors. vol. 1, p. 246–248.

Is the statute still the same in effect? See Code, 622, and see Tucker's Com., vol. 1, book 2, p. 50–56.

Lomax says executors in England are not entitled to emblements as against a devisee unless a contrary intent appears in the will. See vol. 1, p. 243, sec. 11.

Toller says, on p. 202, "This distinction between heir and devisees, however, seems not very reasonable. It appears strange that the corn should pass to the devisee as *appurtenant* to the soil and yet shall descend to the heir. But a devise of the goods, stock and movables is, it seems, entitled to growing corn in preference both to the devisee of the land and the executor. Toller on Executors, 202."

"Until her dower is assigned the widow shall be entitled to demand of the heir or devisees one-third part of the issues and profits of the other real estate which was devised or descended to them of which she is dowable. Code, 532 and 3, sec. 8.

"It may be assigned as at common law or by the court of probate or in chancery. The assignment when confirmed by the court shall have the same effect as if made by the heir at common law." Code, 533, sec. 9.

She may recover her dower and damages for its being withheld; when against the heirs or their assigns the damages shall be for such time after the husband's death as they have withheld the dower, not exceeding five years before the suit is commenced. Against one claiming under alienation by the husband, the damages shall be from the com-

mencement of the suit against such claimant. In either case they shall be to the time of recovery, and if after suit brought the widow die before such recovery of damages, the same may be recovered by her personal representative. Code 533, sections 10, 11 and 12; *McCauley's ex'trx* vs. *Dismal Swamp L. Co.*, 2 Rob. 507.

As to right of dowress to emblements see 2 Scrib. on Dower 30, 727–8.

Does not attach in favor of the widow until after her dower has been assigned. 2 Scrib., 728, sec. 17; 2 Seld., 597, 3 Lentch, 43. And is not assigned until after report of commissioners is confirmed. *Mliler's ad'mr* vs. *Woodman*, 14 Ohio Rep., 418, Code 532 and 533; 2 Scrib., 728.

Certainly not until assignment is in fact made by the commissioners. *Parker* vs. *Parker*, 17 Pick., 226; 2 Scrib., 728.

In the case now before the court, the commissioners, although appointed, had not acted when the crop was severed, and the action was not brought for the crop upon the land subsequently assigned to the widow, but for one-third of the entire crop. What proportion, if any, was grown upon the land assigned to the widow, does not appear. Until assigned the damages recovered from the heir covers any interest she may have in the crops.

BROWN, President. John Engle died on the 18th of October, 1865, having but a short time previous sowed a crop of grain upon his land, leaving a will. He devised his lands to his four sons, subject, however, to his wife's dower right in the same. The crop of grain then growing upon the lands devised was severed from the freehold, by the executor, and sold on the 1st day of October, 1866, for the sum of 2,756 dollars and 45 cents, after deducting all the expenses of harvesting the crop, &c.

The widow claims from the executor the sum of 918 dollars and 81 cents, that being a third of the net proceeds of the crop. To recover this amount she instituted an action of assumpsit. The facts were agreed and appear in the record. The questions of law arising upon these facts were

submitted to the court and decided against the widow's claim.

By the common law the growing crop is a part of the freehold and goes with the land on sale or devise of the latter. There are exceptions, however, in favor of husbandry and relate to emblements; but the exceptions cease with the reason and policy on which they are founded, and the general rule is unquestionable.

Dower is the widow's last plank in her shipwreck, and is given by the common law *ad sustationem uxoris et educationem liberorum*, for the sustenance of herself and the education of her children.

Accordingly Chief Baron Gilbert tersely said, "If Baron sows land, dies before severance, the wife shall have the *third* part of the land *so sown* for her dower, for she shall not stay for her subsistence a whole year till the corn be removed."

As the title to dower is consummated by the husband's death, when the wife is endowed she is in from the death of her husband, and, like any other tenant of the freehold, she takes upon recovery whatever is then annexed to the freehold, whether it be so by folly, mistake or otherwise. 4 Kent, 66.

Under the operation of the statute, which gives to the widow the right to hold, occupy and enjoy the mansion and curtilage without charge until dower is assigned her, the widow is by law deemed in possession as a tenant in common with the heirs to the extent of her right in dower; and her right of entry does not depend upon the assignment of dower, which is a mere severance of the common estate. Though in point of tenure she holds of the heir or reversioner yet the widow claims paramount to the heir. Her estate is a continuation of that of her husband, and, upon assignment, she is in by relation from her husband's death. 4 Kent. 62.

By the statute, Code 1860, chap. 110, sec. 1, the widow

shall be endowed of one-third of all the real estate whereof her husband or any other to his use was, at any time during coverture, seized of an estate of inheritance unless her right to such dower shall have been lawfully barred or relinquished. And by the 8th section, "until her dower is assigned the widow shall be entitled to demand of the heirs or devisees one-third part of the issues and profits of the other real estate which was devised or descended to them, of which she is dowable; and in the meantime may hold, occupy and enjoy the mansion house and curtilage without charge; and if deprived thereof may, on complaint of unlawful entry or detainer, recover the possession with damages for the time she was so deprived."

From the foregoing it is clear that if the growing crop passed by the will to the devisees they must account to the widow for her third of it, under the statute. If it did not, by the common law, she was equally entitled as against the devisees to one-third of the land, with the crop growing upon it, for her dower.

I think, however, that the devise only passed to the devisees, the land and growing crop subject to the widow's dower therein.

And as upon the death of the husband the widow was entitled to be endowed of one-third of the land in value with crop then growing on it, so if the crop be severed before the assignment of her dower she is entitled to be endowed of the land in like manner, and of one-third of the crop thus severed, for by the severance the estate had been diminished in value by the amount of the crop. It has been said that her dower might have been assigned in that part of the land having no crop on it, but that does not alter the case, for even then she would get her share in value of the growing crop, which would have been estimated in adjusting the relative values of the parts.

In every view of the case then the widow here was entitled to her third of the net proceeds of the growing crop.

I am of the opinion, therefore, to reverse the judgment of the court below and enter judgment for the widow, who is the plaintiff in error, with costs in both courts.

The other judges concurred.

JUDGMENT REVERSED.

# Wheeling.