## CHARLESTON.

JOHN A. HOLT *et als. v.* FLORENCE S. HOLT *et als.*

Submitted April 1, 1924. Decided April 29, 1924.

1. EXECUTORS AND ADMINISTRATORS—*Surviving Wife Charged With Rents and Profits Collected From Husband's Properties and Credited With Expenses Incurred.*

Where a wife, during the time her husband is confined in a hospital for the insane, collects the rents and profits from her husband's properties, and receives money from time to time from her husband's committee, and she pays out reasonable

96 W. Va.

sums for fire insurance, taxes and repairs and for expenses
incurred in visits to her husband, and finally her husband
dies, it is proper in settling her accounts with the adminis-
trator to charge her with the rents and profits so collected by
her during her husband's life, and to credit her with the
sums so paid out by her for insurance, taxes, repairs and
visits to her husband, and a reasonable amount for her cur-
rent support during her husband's life.  (p. 344).

2.  SAME—*Wife Not Entitled to Credit in Settlement With Hus-
band's Administrator for Sums Paid on Husband's Insurance
Policy.*

If, during the time her husband is so confined, the wife pays
out of the rents and profits of her husband's property the
premiums on a policy of insurance on her husband's life
in which she is sole beneficiary, she is not entitled to credit
for such sums in her account with the administrator.  They
are not part of her current support for which she is entitled
to credit.  (p. 345).

3.  SAME—*Administrator May Expend Reasonable Amount for
Monument, But Not For Markers at Graves of Other Mem-
bers of Decedents Family.*

In administering the estate of the decedent the administrator
may properly pay out of the personal estate in his hands
a reasonable amount for a monument erected at the grave of
decedent, but not for markers at the graves of other members
of the decedent's family.  (p. 346).

4.  INTEREST—*Computable Only From Date Principal Becomes
Due Where Contract Does not Otherwise Provide.*

Where a contract to pay money does not provide for the
payment of interest, interest is computed only from the date
the principal becomes due and payable.  (p. 347).

5.  LIMITATION OF ACTIONS—*Limitations Do Not Run Against
Wife's Claim Against Husband During Coverture.*

A wife's claim against her husband's estate for money due
on a written contract executed by him in her favor is cog-
nizable only in equity during the coverture while they are
living together; therefore, during such period the statute of
limitations, section 6, chapter 104, Code, does not run
against her claim.  (p. 347).

6.  EXECUTORS AND ADMINISTRATORS—*Wife Entitled to Possession
of Mansion House Before Assignment of Dower.*

After the death of her husband and prior to assignment of
dower, a widow is entitled to hold, occupy and enjoy the

mansion-house, either by actual occupancy or by renting it to others. If, during such period, the administrator of the deceased husband's estate rents the mansion-house, the widow, in an accounting with him is entitled to receive the rents therefrom, without deduction of taxes or charges for fire insurance upon the mansion-house which have been paid by him; but he may deduct from the rents so collected a reasonable sum necessarily expended by him to keep the premises in repair.  (p. 349).

McGINNIS, JUDGE, absent.

Appeal from Circuit Court, Taylor County.

Action by John A. Holt and others against Florence S. Holt and others, in which the named defendant filed a cross-bill. From the judgment rendered, plaintiffs appeal, and named defendant cross-appeals.

*Reversed in part.   Affirmed in part.   Remanded.*

*W. Merle Watkins,* for plaintiffs.
*Harry Friedman,* for defendant.

MEREDITH, PRESIDENT:

By plaintiff's assignments of error and defendant Florence S. Holt's cross-assignments, parties to the suit complain of the decree of the circuit court of Taylor County.

The original bill filed at December Rules, 1920, had for its object the sale of the real estate of which James W. Holt, late of Grafton, died seized. His heirs at law, who brought the suit, alleged, that the real estate was not susceptible of partition in kind, wherefore they prayed that it be sold, and the proceeds divided between them and Florence S. Holt, the widow of the decedent. The widow and one infant heir at law of James W. Holt were made parties defendant, but as the widow is the real party whose interests are opposed by the plaintiffs, we shall, when using the word "defendant" have reference to her only. At January Rules, 1921, plaintiffs filed an amended and supplemental bill in which the chief allegation was that by deed dated October 9, 1913, James W. Holt conveyed to Florence S. Holt part of Lot 84

of the Luzador Addition to the town of Grafton, being part of the real estate described in the original bill; but that after the death of decedent the plaintiffs had threatened to bring suit to set aside that conveyance on account of the alleged mental incompetency of the grantor, he having been committed to the State Hospital for the Insane in 1915, and that thereupon, by deed dated January 25, 1918, said Florence S. Holt conveyed the said lot to Alfred A. Holt, administrator of James W. Holt, deceased, reserving to herself her right of dower therein; wherefore said Alfred A. Holt, administrator, holds the lot in trust for the heirs of James W. Holt, subject to the dower of defendant. They prayed for the same relief asked for in the original bill, and for further general relief. The deeds referred to were exhibited with the bill.

On February 16, 1921, defendant filed in open court her answer and cross-bill. She admits the existence of the heirs at law named in the bill, also the execution of the deeds exhibited; she denies the incompetency of her husband at the time the deed to her was made, and avers that the reconveyance by her to Alfred A. Holt, Administrator, was effected by the insistence of one of her step-sons, at a time so shortly after the death of her husband that she was not in proper mental condition to transact business. She points out that the reconveyance shows that without any valuable consideration moving to her, except one share of stock in the Farmers' State Bank of Gage, Oklahoma, worth $125.00, she agreed to part, not only with part of Lot 84, reasonably worth $3000.00, but also with ten shares of stock in the Grafton Banking and Trust Company, worth $1625.00, and ten shares of Wheeling Steel and Iron Company stock, worth $1865.00. She charges that because of her mental condition, and her misplaced confidence in her step-son, her deed of reconveyance should be set aside. She alleges that the part of Lot 84 conveyed was the home and mansion house of her husband, and that until her dower is assigned she is entitled to the rents and profits therefrom, but that Alfred A. Holt, Administrator, has taken possession of said home and has been collecting said rents and profits.

She refers to the appraisement of the personal estate; also to the administrator's settlement of accounts, showing, among other matters, certain personal property sold by the administrator, and the proceeds charged to him as follows:

| | |
|---|---:|
| 10 shares of stock in Grafton Banking and Trust Company | $1625.00 |
| 10 shares of stock in Wheeling Steel and Iron Company | 1896.00 |

The Administrator is allowed credit as follows:

| | |
|---|---:|
| By 12 shares Wheeling Steel and Iron Company | $1896.00 |
| By lot in City of New York | 750.00 |
| | $2646.00 |

The twenty shares of stock charged to the administrator are the same shares conveyed to him by defendant, and she alleges that neither the stock nor the $750 lot were proper charges or credits to the administrator, as they were and are her own property. She alleges further that at the date of his death James W. Holt was indebted to her upon two notes, one for $250.00, dated November 2, 1906; the other for $109.00, dated August 29, 1907; both with interest from their respective dates, and she charges that, though their genuineness had been admitted by the administrator, and her step-son, Howard H. Holt, they were returned to her by the administrator with the information that they were "outlawed." She prays that her conveyance to the administrator be set aside; that the ex parte settlement of the administrator in which the 20 shares of stock were treated as property of the estate be falsified; that the debts against the estate of James W. Holt be ascertained; that the administrator's accounts be settled; and that her dower in both the real and personal estate be ascertained and paid in money. She files as exhibits copies of the appraisement and administrator's settlement, and a copy of her agreement of reconveyance, dated January 19, 1918. The exhibits contain many items, including the charge and credit of the

stocks to the administrator, and other matters, some of which are to be discussed.

Plaintiffs replied to the answer and cross-bill by a pleading termed by them a demurrer, general replication and answer. They modified .their original allegation as to the manner of James W. Holt's commitment to the State Hospital for the Insane so as to show that he was adjudged insane by a justice of the peace April 6, 1915, and was thereafter committed to the hospital. They point out the disparity in ages between defendant Florence S. Holt and her deceased husband; they emphasize defendant's domination of her hubsand by reason of her superior mental and physical faculties, and her ultimate success in persuading him to convey to her the home property, part of lot 84; they allege that the settlement of the controversy over the competency of her husband at the time he executed the deed was sufficient consideration for her reconveyance; they allege that at the date of decedent's death the house was not the mansion·house, that it was not occupied by defendant Florence S. Holt, that on the contrary, it was rented to others. As to the $750 lot in Brooklyn, plaintiffs charge that defendant requested that she be allowed to retain title thereto and be charged with the value thereof. Plaintiffs state that they are advised that the two notes of $250 and $109 are barred by the statute of limitations and are therefore not proper charges against the estate. They deny that defendant placed special confidence in her step-son, Howard H. Holt, but they deny also that Howard H. Holt or any other of the plaintiffs have deceived or attempted to take advantage of her; on the contrary, they complain of defendant's unreasonable demands and claims; and they ask that they be dismissed as to defendant's cross-bill.

On all of these matters, the case was referred to J. F. Wilson, one of the commissioners of the court, with directions that he ''audit, restate and settle'' the administration accounts, with particular instructions as to certain matters involved. The commissioner returned his report, consisting of various items, and in which alternative answers were given on certain points. Upon consideration of all these

proceedings, the court, on March 15, 1922, entered a decree, and filed a written opinion in support thereof, in which many of the controlling questions were decided; and re-referred the case to the commissioner with instructions that his report be modified to conform to the court's decree.

With said decree and opinion before him, the commissioner filed a second report, and as modified by the final decree, it is this second report which is the object of both parties' assaults. In general, the report shows:

| | | |
|---|---|---:|
| 1. | Debts due Florence S. Holt.......... | $   698.90 |
| 2. | Dower interest of Florence S. Holt in New York lot.................... | 117.30 |
| 3. | Total personalty chargeable to the administrator ..................... | 11,596.05 |
| 4. | Credits to administrator............. | |
| 5. | Amount due Florence S. Holt, dower in personalty.................... | 2,644.05 |
| 6. | Value of personalty due six heirs.... | 5,288.11 |
| 7. | Dower interest of Florence S. Holt in New York lot.................... | 117.30 |
| 8. | Interest of other heirs in New York lot | 632.71 |
| 9. | Rent account of administrator, less credits for taxes, and balance due Florence S. Holt and heirs........ | |
| 10. | Total amount due Florence S. Holt, November 13, 1922, less credits.... | 1,168.24 |

The court in its decree ascertained that by an error in calculation amounting to $60.00, and by reason of the administrator being improperly credited with an expenditure of $285.00 for markers erected in the James W. Holt cemetery lot, defendant's dower interest in the personalty should have been $2759.05 instead of $2644.05, and the interest of the heirs $5518.11, instead of $5288.11. Carrying this correction through to the final balance, the court decreed defendant a balance of $1,279.91 instead of $1168.24, in full settlement against the administrator for her interest in the New York lot and the personal estate of her husband; and also decreed to her her dower interest in the real estate aside

from the New York lot. The court computed her dower interest in such other real estate to be $596.09, and as to it there is no dispute, and the suspension of the decree pending the appeal does not apply to it. Defendant does object, however, to the court's decree against her of $89.88, the costs of the first reference to the commissioner.

As there are many items in the commissioner's report as confirmed by the decree which are not assailed here, we will not attempt to analyze the whole report in detail. Our efforts will be confined to a solution of the questions raised on the contested items.

Plaintiff's first objection is directed to that part of the decree which allows Florence S. Holt credit in her account with the administrator for $148.16, the aggregate of state, county and city taxes paid by her on lot 84 for the years 1914 to 1917 inclusive. It will be recalled that during this period the record title to this property was in her by virtue of the deed from her husband. As the court found that by reason of her husband's mental incompetency when executing the deed, defendant only held the title in trust for him, and after his death for his heirs, and charged her with the rents which she received from the property, it is very plain that she should have credit in her account for the moneys expended by her for the taxes.

The second error asigned relates to the allowance of credit to defendant for various small amounts paid out for papering, repairs, fire insurance, interest on a note of decedent, painting and taxes on lands of decedent in Randolph County. Practically the same may be said of these items as of the taxes on the residence in Grafton in the preceding paragraph. It is objected that defendant's evidence of payment of these sums is improper under sec. 23, ch. 130, Barnes' Code, 1923, which forbids a party to a suit from testifying as to transactions with a deceased person. It is sufficient answer to this objection to say that defendant testifies to having paid the various amounts, that she exhibits receipts evidencing the payment of many of the items, and that there is nothing in her testimony indicating any transaction

or communications with her deceased husband relative to the subject.

The circuit court's decree    confirms    the commissioner's allowance to defendant of $990.00 to be paid by the administrator to cover her support for 33 months at $30.00 per month.    This was the period extending from the date of decedent's commitment to the hospital for the insane to the date of his death, and defendant claims the personal estate should reimburse her for her support.    Plaintiffs take the position that while decedent was liable to defendant for her current support, that does not warrant her in allowing her claim to accumulate until after his death and then present her demand.    Whether or not this argument of plaintiffs has any merit, it does not fit the facts here.    Defendant did not wait until her husband's death to make her claim.    She received sums of money at different times during her husband's confinement from properties found by the circuit court to be part of· his estate.    The report of the commissioner shows she received $260.00 in rents from the dwelling, $360.00 in dividends from the Trust Company stock, and $413.00 from her husband's committee.    These sums were current funds and were no doubt applied to her current support; they were expended from the properties of decedent before his death and were charged to defendant's distributive share.    It would certainly have been unfair to have charged her with these expenditures and not to have credited her with the support to which she was entitled.    We find no error in this particular.

Plaintiffs except to the crediting to defendant of $225.00 for money paid out by her in satisfaction of the premiums due on a life insurance policy which decedent has issued on his life and in which defendant was the beneficiary.    Although counsel do not cite any authority to us on the proposition, we are unable to see how she is entitled to credit on this item.    The policy was not for the benefit of the estate, nor was it a necessary required for her support.    While she had a perfect right to keep the premiums paid on the policy, it is quite clear that it was for her sole benefit, and was something to which she was not entitled as a matter of

right. She can not claim reimbursement for the $225.00 expended by her, and the exception is well taken.

As to the $129.00 expense incurred in connection with her 43 trips to the hospital to visit her husband, we think the decree is clearly right. It was her husband's right to have the benefit of his wife's society at all suitable times, and as often as was convenient and possible. It was her marital duty to visit him and afford whatever comfort was possible under the circumstances. The number of the visits indicates that they were with his assent, and no doubt were at his express request.

Plaintiffs' objection that the administrator is charged with 11½ months' rent at $22.00 per month, instead of 6 months' rent, requires little comment. The commissioner's report shows on its face that rent was collected to November 13, 1922, and we find no error therein.

A question of some importance raised by this record is whether or not the administrator can properly expend moneys out of the estate for a monument for the decedent. Formerly there was some difference of opinion on this question, but we think there is little doubt on the subject now.

> "The expense of erecting a tombstone or monument at the grave of decedent is usually allowed against the estate, especially where the estate is ample, such expenditure being sometimes considered part of the 'funeral expenses.'"    24 C. J. p. 308.

Of course, the cost of the monument must be reasonable in the light of the size of the estate involved, and as prices of such things range now, we think there can be no doubt here on that score. However, the circuit court properly rejected from the claim filed, the cost of markers to other graves in the family plot, amounting to $285.00. Such cost was clearly not a charge against the estate of this decedent any more than against other members of the family. See 2 Schouler, Wills, Executors and Administrators (5th ed.) sec. 1422.

Plaintiffs object to the allowance to defendant of $698.90, principal and interest on two written instruments termed in the record "notes" signed by James W. Holt, and pay-

able to defendant. The first, dated November 2, 1906, was for $250.00, and reads in part as follows:

> "There is due my wife, Florence Stemple Holt, from me, the sum of Two Hundred and Fifty Dollars, ($250.00) and payable out of my estate for money advanced by her out of her separate estate," etc.

The second, proven to have been dated August 29, 1907, was for $109.00, and payable one day after date.

The court allowed interest on both notes from their dates, though interest was not mentioned in either. Of course, the rule is that interest is a subject of contract, and in a contract to pay money, interest is computed from the time when the principal debt should have been paid, unless the agreement itself fixes the date from which interest is to run. 16 Am. & Eng. Ency. Law, (2d. ed.) p. 1041; *Buchanon* v. *Leeright,* 1 Hen. & Mun. (Va.) 211. With reference to the contract to pay the $250.00, the circuit court in its opinion says it "expressly says that it is to be paid 'out of my estate', clearly indicating that it was not to be paid until the death of James W. Holt and this occurred January 15, 1918." Other circumstances aside from death might create an estate, and for this reason the court's language may not be entirely accurate. However, as far as this case is concerned it does apply. James W. Holt's estate was created by his death on January 15, 1908, and on that day for the first time the $250.00 was due and payable. From that date the interest should have been computed, and it was error to calculate it from the date of the instrument. As to the $109.00 note, of course, it was due one day after date, and the calculation as affirmed by the decree is substantially correct.

A sufficient answer to plaintiffs' contention that the notes were barred by the statute of limitations is that since the transaction here was solely between the husband and wife (as distinguished from *Hamilton* v. *Hamilton,* 95 W. Va. 387, 121 S. E. 290, wherein the husband's note was made payable to a third party and assigned to the wife), defendant's remedy is in equity alone, *Bolyard* v. *Bolyard,* 79 W. Va. 554, 91 S. E. 529. The relief sought being purely equitable, the statute of limitations has no application.

"The contracts between husband and wife during coverture, while living together, thus being cognizable only in equity, having jurisdiction of the subject matter, the statute of limitations can have no application to them." *Mynes* v. *Mynes*, 47 W. Va. 681, 699, 35 S. E. 935; citing *Righter* v. *Riley*, 42 W. Va. 633, 26 S. E. 357.

The notes with interest properly computed are to be treated as credits in favor of defendant.

Having disposed of the errors assigned by plaintiffs, we turn to defendant's objections to the decree.

First. She objects to the finding of the circuit court that she held the residence lot and the shares of stock in the Wheeling Steel & Iron Company and Grafton Banking & Trust Company in trust for her husband's estate. In line with this finding the court also charged defendant with $620.00, proceeds of rents and dividends from such properties. Her statement here is a bit inaccurate. The commissioner's report shows that she was charged in her account with the administrator only with the rents from the house, $260.00, and the dividends from the Trust Company stock. She testified that the Steel Company stock was always hers, that it was bought for her, and the commissioner did not charge her with the dividends from it. With considerable evidence to support its finding, the circuit court held in effect that James W. Holt was incompetent to transfer the residence to defendant when he attempted to do so in 1913, and we could not reverse its judgment on the facts involved relative to that question. As she failed to prove that the Trust Company stock was her own separate property, the court was likewise justified in holding that it was in fact the property of the husband. The conclusion, therefore, is that the rents and the dividends from this property and stock to the date of decedent's death were proper charges against her, and as heretofore stated, proper offsets against her claims for support. The Steel Company stock was sold by the administrator and the proceeds turned over to defendant, and charged to her in her account with him. Regardless of whether or not this stock was her own property, under the circuit court's finding, she voluntarily conveyed it to the administrator, and

the proceeds were therefore correctly charged to her. She claims the conveyance was not voluntarily made by her, but that also was a question of fact concerning which on this record the circuit court's judgment must stand.

Second.    Defendant's second assignment is in regard to the allowance of credit to the administrator for expense incurred in the purchase of the monument and markers. This proposition we have already considered.

Third.    It appears that several months after the death of James W. Holt, the dwelling was rented by the administrator, and the rentals were collected by him. In giving defendant crèdit for her dower in these rentals, the commissioner deducted all amounts paid out by the administrator for insurance, taxes and repairs from the total of rents so collected by him, and awarded defendant one-third of the balance, $97.46. In our view, this method of calculating her interest was clearly erroneous. Section 8, chapter 65, Barnes' Code, 1923, provides:

> "Until her dower is assigned, the widow shall be entitled to demand of the heirs or devisees, one-third part of the issues and profits of the other real estate which was devised or descended to them, of which she is dowable, and in the meantime may hold, occupy and enjoy the mansion house and curtilage, without charge and if deprived thereof, may on complaint of unlawful entry or detainer, recover the possession, with damages for the time she was so deprived."

But plaintiff's position is that while defendant, prior to the assignment of dower, had the right to occupy the whole mansion house, and to receive one-third of the issues and profits of other dowable property of her husband, she can not rent the mansion house and receive all of the rentals. This question is an important one, and for a time the answer in this jurisdiction was in some doubt. In *Grayson* v. *Moncure,* 1 Leigh (Va.) 449, the question was raised, but the answer was not suggested. In *Engle* v. *Engle, Ex'r.,* 3 W. Va. 246, we find it stated in the argument of counsel that the Revisors of the Virginia Code of 1849 provided in their report that "until dower is assigned, the widow shall have a right to

occupy and have the rents and profits of the mansion house and the tract of land on which it is." The Legislature refused to incorporate this revision in the statutes, but can we say from the terms of the statute adopted that it was not intended that the widow should have the rents from the mansion house? The statute as then enacted is substantially the same on the point raised as the act now in force. "The widow may hold, occupy and enjoy the mansion and curtilage." These words say that until dower is assigned the widow shall have the right not only to inhabit the house but to hold and enjoy it. This is a right vested exclusively in such widow, and we do not think it is intended that she shall be compelled to live in the mansion. The provision is primarily for her comfort and support, not for her confinement. It may be that counsel in the Engle case did not give sufficient attention to the case of *McReynolds* v. *Counts,* 9 Grat. (Va.) 242, for the court in the opinion in that case seems to have arrived at the solution of the problem when it said:

> "She had the right to occupy the mansion house and land belonging thereto without rent, until her dower was assigned. In this case the only land owned by the testator was the land belonging to the mansion house. She might occupy the land herself, or allow another to occupy it for her. It was therefore, error to direct an account of rents and profits whilst it was so held either by her or by Isaac McReynolds with her permission."
>
> "The object of the statute is to provide for her support until dower is allotted, on which she may enter. For this purpose she may rent the premises, and if the administrator or heir, or any other person, receives the rents, she is entitled to recover them." *Reeves* v. *Brooks,* 80 Ala. 26.

In accord with the authorities just cited, see: *Conger, Adm'r.* v. *Atwood,* 28 Oh. St. 134, 22 Am. Rep. 462; *Craige* v. *Morris,* 25 N. J. Eq. 467; *Graham* v. *Graham,* 6 T. B. Mon. (Ky.) 561, 17 Am. Dec. 166; *Shoultz* v. *Lee,* 260 Mo. 719, 168 S. W. 1146. The statutes in effect in the jurisdictions from which some of the foregoing cases are taken are not precisely like our own, but for present purposes, there is no es-

sential difference. We conclude, therefore, that defendant was entitled, not to one-third, but to the whole of the rents which accrued from the mansion house from the death of James W. Holt, and prior to the assignment of dower.

It is contended, however, that the commissioner made proper deduction for taxes, repairs and insurance, before awarding defendant's share of the rents to her. It is well settled that the estate, not the doweress, must pay the taxes.

> "Upon the death of the owner  intestate,  his real estate descends upon his heirs. It is charged to them upon the commissioner's books, and to them exclusively the law looks for the payment. of the accruing taxes. The widow occupying the mansion house is not known, nor is her interest recognized in the various statutes relating to the collection of public revenues. - - - And if through the default of the heir, the widow, to save her estate, is compelled to pay what the law requires him to pay, she may compel him to refund the amount so paid for his benefit." *Simmons* v. *Lyles,* 32 Grat. (Va.) 752.

Accord, see: *Dillard's Adm'r.* v. *Dillard et als.* 78 Va. 820; *Smith* v. *Stephens,* 164 Mo. 415, 64 S. W. 260; *Shoultz* v. *Lee, supra;* cases cited in 10 Am. & Eng. Ency. Law (2d. ed.) p. 150.  As to deductions for insurance, there is no sound argument for requiring the widow to protect the property from fire for the benefit of the other beneficiaries of the estate.  Her tenure of the mansion house is too uncertain to burden her with this expenditure.  As to the repairs, we find what we consider the correct rule stated in 24 C. J. p. 235:

> "A widow in possession of quarantine property for a considerable period may be charged with her fair proportion of the cost of  incidental  repairs  upon  the dwelling house, but not for the cost of permanent repairs."

Such repairs as we find charged to defendant in this case seem to us to be properly chargeable items.  Small expenditures for painting, papering and roof repairs are such as would naturally be incidental to her occupancy, and we think no injustice is done her on that score.

Fourth.   At the time of her husband's death, title to the New York lot valued at $750 stood in defendant's name; but by a writing dated and acknowledged August 5, 1918, she admitted that she held this lot, in trust for James W. Holt. In the final distribution with the administrator this lot was assigned to her and she was charged with its value, $750.00, and credited with $117.39, the value of her dower therein in money, calculated according to her expectancy of life.   She claims now that she should have been credited with one-third of the value of this lot.   She is in error as to this.   In her cross-bill answer she elected to take her dower in the real estate in money.   She received what she requested.

Fifth.   Defendant objects to the charge to her of $89.88, the cost of the first reference to the commissioner.   This reference was ordered by the court to determine the status of the administration account, as well as the status of the title to the real estate and personal property, matters of interest to all parties, and evidence as to all of these matters was taken by the commissioner.   The costs of the various items of the case are not separated, and as it is evident that the plaintiffs have prevailed as to some matters and the defendant as to others, we think the costs should have been charged to the entire estate; thus defendant would share her portion of the burden, but not all of it.

As a summary of our review of the various points raised, we reverse the decree of the circuit court in the following particulars:

1.   The court erred in allowing credit to defendant of $225.00, premiums paid by her on the policy of insurance on her husband's life.

2.   The court erred in allowing interest on the note of $250.00 from its date, November 2, 1906, instead of from the date of the death of James W. Holt, January 15, 1918.

3.   The court erred in decreeing that defendant is entitled to only one-third of the rents accruing from the mansion house from the date of her husband's death until the assignment of dower; also in deducting from   such   rents amounts expended by the administrator for insurance and taxes on the house and on the Randolph County lands.   She

is entitled to all the rents on the mansion house as shown by the commissioner's report, free from deductions for insurance, and taxes, but subject to deductions for incidental repairs as shown by the commissioner.

4. The court erred in charging defendant with the entire costs of the first reference to the commissioner, $89.88. The defendant should bear one-third of this amount, plaintiffs the remainder.

In all other matters the decree is affirmed, and the case is remanded that proper calculations may be made up to the date dower is assigned and final decree entered in accordance with the principles herein set forth.

It appears that defendant took the New York lot, valued at $750.00, as part of her distributive share of the estate. It is not shown from the record that she has acquired the deeds necessary to free her title from the claims of the heirs. As one of these heirs is an infant, it appears that it will be necessary to appoint a special commissioner to execute the proper conveyances of the interests of the heirs of this property, evidenced by the declaration of trust. This matter should be taken care of in the final decree.

*Reversed in part. Affirmed in part. Remanded.*