GEORGE LOVE, *et als.* v. KATHRYN WARD, *et als.*

(No. 8910)

Submitted September 26, 1939. Decided October 24, 1939.

*Will H. Daniel* and *R. R. Smith, Jr.,* for appellants.
*Frank Love,* for appellee George Love.

HATCHER, JUDGE:

The questions here relate to divisional transfers of consummate dower, unassigned.

Alex McNabb, owning much real property, died in 1926, married, childless and intestate. His heirs were his widow, Florence, now Florence McNabb Taylor, a sister, Margaret Gulley, a sister, Sarah Caple, and George Love and the other children of a deceased sister, Mary Love. Dower was never assigned Mrs. Taylor. In 1935, Mrs. Gulley, both in her own right and as testamentary repre-

sentative of the Caple heirs, under the will of Mrs. Caple, then deceased, and the Love children, voluntarily partitioned among themselves all of the McNabb real estate, except the mansion house property and a lot referred to as No. 14. Following this, Mrs. Taylor, for valuable considerations, disposed of her dower as follows: (a) to a son of Mrs. Caple, by deed dated December 18, 1935, "the dower interest" in the one-third of. the Alex McNabb property partitioned to the Caple heirs, "or which may be hereafter partitioned or assigned to" them or their assigns; (b) to Mrs. Gulley, by a receipt dated June 1, 1936, the "Dower in the lands inherited by Margaret Gulley from Alex McNabb"; and (c) to Frank Love, (in his own right) by deed dated December 19, 1936, all her "right, title and interest, including the right of dower or life estate" in the mansion house property, lot No. 14, and the lands partitioned to the Love heirs, and "all rights, legal and equitable", which she might "own or be entitled to arising from ownership of the said real estate."

Alex McNabb Estate, Inc., has acquired the entire Caple interests. So the mansion house property and lot No. 14 are now owned in equal proportions by Mrs. Gulley, Alex McNabb Estate, Inc., and the Love heirs (there has been some buying and selling of the Love interests among themselves). This suit was brought in 1937 by George Love and others to partition or sell these two properties. The title holders of record are parties, and all concur that partition is not practicable; the hitch is over the nature and extent of the interests Frank Love acquired from Mrs. Taylor.

It does not appear when Mrs. McNabb married Mr. Taylor, and the evidence of her connection with the mansion house and of her dealings with the other heirs is not complete. She paid both taxes and insurance on the mansion house property from 1926 to 1936, inclusive. There is testimony to the effect that she did this because of a mutual mistake of law by her and the other heirs, and the commissioner herein so found. An answer of

Alex McNabb Estate, Inc., and Mrs. Gulley, alleged without denial that Mrs. Taylor "has long since abandoned the mansion house and is now a non-resident of the State." There is no evidence regarding her occupation of the house; but the commissioner found without exception that "she occupied as widow the entire residence property * * *. This condition of occupancy * * * has continued down to the present time * * *." This finding is subject to some qualification, because another person has been in the physical possession of the mansion house for several years, and at the time of the report was presumably the tenant of Frank Love. Reference is made in the evidence to settlements of some kind between her and the other heirs in which she was charged with the taxes on the "home place", and to a custom after 1931 of having an accountant "make up statements, showing the amounts to which the various parties were entitled out of receipts from the rents of the estate * * *." What happened then is not recounted.

The leading contentions of Frank Love are (1) that under his purchase from Mrs. Taylor, he became the owner of her entire dower in lot No. 14 and in the mansion house property, including her right of quarantine; (2) that the taxes and insurance on this property paid by her should be adjudicated charges against it and, upon its sale, paid to him as her assignee; and (3) that because dower was never assigned in the property and cannot be assigned in kind now, her right of quarantine has become converted into a life estate, the value of which (now his), upon sale of the property, should be computed as a life tenancy. The circuit court sustained him and directed sale of both properties. Mrs. Gulley and Alex McNabb Estate, Inc., appealed.

1. Prior to appellee's purchase from the dowress, she had made two releases of dower in certain of the McNabb lands, one release relating to the one-third interest of the Caple heirs and the other to the one-third interest of Mrs. Gulley. The Caple release included the lands partitioned to the Caple heirs and what thereafter might be

"partitioned or assigned" to them or their assigns. Appellee contends that the quoted phrase does not apply to the mansion house property and lot No. 14, for the reason that they never have been partitioned or assigned, and cannot be now. When the Caple release was made, those two properties were all of the McNabb estate remaining unpartitioned, and the only properties to which the future reference could apply; the two were subject to partition, are asked to be partitioned in this suit, and would be partitioned if practicable. We are of opinion, despite the fact that ultimately they may be sold instead of partitioned, they were meant to be included in the Caple release, and that thereby Mrs. Taylor parted with one-third of her dower in them.

The plain words of the release to Mrs. Gulley would also include one-third of the dower in the two properties. But her answer states that the purchase was not meant to do so, though meant to deprive Mrs. Taylor of her right of quarantine. By reason of this concession, appellants do not question that appellee, by his deed from Mrs. Taylor, acquired the two-thirds of dower retained by her in the two properties after the Caple release.

Magna Charta provided that a widow should remain in "the capital messuage" of her husband for forty days after his death, within which time dower should be assigned. This provision, termed *the widow's quarantine*, has seemingly not been changed in England to this day. First, in Virginia and then in West Virginia, the widow was given the right by statute to remain in the mansion house free of rent *until dower was assigned*, no matter how long the assignment was postponed. The history of these provisions was attempted in *Amiss* v. *Hiteshew*, 106 W. Va. 703, 705, *et seq.*, 147 S. E. 26.

We recognize that a widow may sell unassigned dower. *Fleming* v. *Pople*, 78 W. Va. 176, 177, 88 S. E. 1058. Also that a widow prior to assignment of dower may *enjoy* the mansion house under the statute by leasing it and receiving the rent. *Holt* v. *Holt*, 96 W. Va. 337, 350, 123 S. E. 53. But we are not advised of an authority advocating

either that she may sell her right of quarantine or that the right will persist in favor of herself or another after she has disposed of her entire dower. Both at common law and under the statute, the right has always been regarded as personal to a widow with dower unassigned. Wherefore, the right is not saleable, and terminates when she disposes of dower. So instead of Mrs. Taylor's right of quarantine persisting in favor of appellee, the right terminated in 1936, if not before, when she finished disposing of her dower.

It may even be that her right expired before 1936, since the exhibits show that she had remarried before then. At common law the marriage of the widow terminated her quarantine. Minor, Real Prop., sec. 338, pp. 398-9. The courts of the Virginias have treated their statutes as merely *extending* or *enlarging* the common law quarantine. *Simmons* v. *Lyles,* 32 Gratt. 752, 758; *Amiss* v. *Hiteshew, supra,* on 708. Mr. Lomax, in Vol. 1, p. 109 of his Digest, says that the Virginia statute "seemed equally with the English law, to imply the continuance of the state of widowhood as essential to the right of the feme to remain and continue in the mansion house." Our search has not discovered a decision in the Virginias pronouncing the effect of the statute upon this common law rule, and the opinion of Mr. Lomax, though an able commentator, is merely persuasive. The courts of Alabama, Missouri and seemingly Delaware, have held that statutes similar to ours did abrogate the rule. Since, however, this subject was neither briefed nor argued, we will not pass on it now.

2. Code, 43-1-10 gives to a surviving widow the right, until dower is assigned, to "hold, occupy and enjoy" the mansion house and curtilage "without charge for rent, repairs, taxes and insurance." There being no obligation on the widow of Mr. McNabb to pay the taxes and insurance on his mansion house property, and the payments having been made because she and the other heirs mutually mistook the law, and the payments having inured to the benefit of the estate, she was entitled to demand

reimbursement. *Simmons* v. *Lyles, supra; Holt* v. *Holt, supra,* on 351. This right, so far as it included the insurance payments, was a simple chose in action against the heirs, and did not attach in any manner to the mansion house property. *Fleming* v. *Pople, supra.* Consequently, the appellee acquired no interest in this chose under the deed conveying him Mrs. Taylor's "right, title and interest" in that property, including what her "ownership" of it might entitle her. (The word *ownership* as used in this connection is a misnomer.) But this right, so far as it included the tax payments, was not only a chose in law, but was a cause for suit in equity, where she would have been subrogated to the tax lien of the state against the property. *Simmons* v. *Lyles, supra; Camden* v. *Fink etc., Co.,* 106 W. Va. 312, 145 S. E. 575, 61 A. L. R. 584; *Henry* v. *Musgrave,* 113 W. Va. 448, 168 S. E. 474; *Buskirk* v. *Bank,* 113 W. Va. 764, 766, 169 S. E. 738. The word "interest" is said to be one of "extreme elasticity", which may be used to mean a right in or affecting property, enforceable by judicial proceedings, and which includes "nearly everything legally connecting claimant with the subject matter." 33 C. J. 261-2. Therefore, the right to subrogation did constitute an equitable interest in the property, and did pass to appellee under his deed, provided Mrs. Taylor then knew of her right.

The circuit court held that Alex McNabb Estate, Inc., was not a purchaser without notice of this claim, and was liable for its *pro rata* part. There is no evidence of actual notice to the Estate, and there was nothing of record to give constructive notice. A purchaser must look to the record to see that the taxes are paid, but is not required, without being put on guard, to go outside the record and ascertain who paid them. Whatever the liability of the Caple heirs to Mrs. Taylor for her payments, it is not shown to have attached to the Estate.

3. Appellee's contention that Mrs. Taylor's right in the mansion house had been converted into a life estate is based largely upon expressions in *Engle* v. *Engle,* 3 W. Va. 246, and *Casto* v. *Kintzel,* 27 W. Va. 750, 756. In both cases,

a widow with dower unassigned was said in effect to have *a defeasible freehold for life.* We cannot accept that classification. We recognize that a widow, dower not being assigned nor disposed of, may in fact occupy the mansion house during life. But that contingency does not raise to the dignity of a freehold estate a possession terminable at the will of him who owns the fee (by the assignment of dower). A right of possession so precarious is analogous to a mere tenancy at will, though not actually such a tenancy. *Simmons* v. *Lyles, supra; Amiss* v. *Hiteshew, supra; Jordan* v. *Sheridan* (Ky.), 149 S. W. 1028. This court did not adhere to the classification of the *Engle* and *Casto* cases but in later years adopted the view supported by the great weight of authority that dower, consummate and unassigned, is a right or chose in action and not an estate in land. *Huddleston* v. *Miller,* 81 W. Va. 357, 94 S. E. 538; *Minner* v. *Minner,* 84 W. Va. 679, 681, 100 S. E. 509; *Coleman* v. *Stave Co.,* 112 Va. 61, 70 S. E. 545; 2 Scribner on Dower (2d Ed.) 27; 10 A. and E. Ency. Law, 146; Annotation 81 A. L. R. 1110; 17 Am. Juris. 705-6. Quarantine, being but an incident of unassigned dower, belonging to and inseparate from it, cannot rate a higher classification.

The decree of the circuit court is reversed and the cause remanded for further proceedings not inconsistent with this opinion.

*Reversed and remanded.*

MAXWELL, JUDGE, dissenting in part:

In respect of taxes paid by Florence McNabb Taylor, the majority opinion states that "the right to subrogation did constitute an equitable interest in the property, and did pass to appellee under his deed, provided Mrs. Taylor then knew of her right." In my judgment it makes no difference what she thought, or knew, respecting her equitable right of subrogation. The question is what did she sell and convey to Frank Love as indicated by the language of her deed of December 19, 1936, whereby she

and her husband (J. W. Taylor) did "grant and convey unto the party of the second part all of their right, title and interest, including the right of dower or life estate of the said Florence McNabb Taylor in and to" certain described real estate whereof Alex McNabb died seized and possessed. I am impressed that the words "right, title and interest" as here used pertain only to the parcels of real estate mentioned and described in the deed. Real estate—tangible property—or interest therein, was the subject matter being dealt with by the parties to the deed. Choses in action were not involved. The majority opinion says so concerning insurance which had been paid by the widow. That is right. I would apply the same gauge to taxes paid by her. The fact that she was entitled to subrogation to the state's tax lien does not, in my opinion, enlarge her right of equitable suit into a right of property—a tangible thing to pass under a deed conveying, according to its language, merely an interest in land. Tangibles and intangibles should not be confused. Words pointing specifically to tangibles should not, through liberality of construction, be deemed inclusive of intangibles. Courts must not make contracts. Therefore, I respectfully dissent from the second sentence of syllabus point three and so much of the opinion as covers the same proposition.

Judge Fox concurs herein.